JOHN MIX ARMSTRONG, Appellee, *vs.* MARY J. BARBER *et al.*
Appellants.

*Opinion filed April 23, 1909.*

1. WILLS—*rule against perpetuities relates to the time of the
vesting of the estate.* The rule against perpetuities has reference
to the time of the vesting of the estate and not to the postpone-
ment of possession, and an interest which is to begin within lives
in being and twenty-one years thereafter, though it may end be-
yond such period, does not come within the rule.

2. SAME—*courts favor the vesting estates.* Estates, equitable
or legal, given by a will should be regarded as vesting immediately,
unless the testator has by very clear language manifested an in-
tention that they shall be contingent upon a future event.

3. SAME—*effect where payment is postponed for convenience
of the estate.* While it is a general rule that where there are no
words importing a gift, other than to the executors or trustees to
divide or pay over at a future time, the legacy is contingent, yet
if the payment is postponed for the convenience of the funds of
the estate, and not for reasons personal to the legatee, the legacy
should be held to be vested; and courts will hesitate to apply the
general rule where the gift is not to a class but to named legatees.

4. SAME—*when rule against perpetuities does not apply.* Where
there is a present gift of the testator's property to trustees, with
full power to sell and dispose thereof, the facts that the residue of
the estate, after the payment of the testator's debts and a specific
legacy, is to be held and managed by the trustees for the period
of not exceeding ten years "from and after the probate of this
will," and that the time for beginning and ending payments of the
income is fixed with reference to the probate of the will, do not
render the will obnoxious to the rule against perpetuities. (*John-
son* v. *Preston*, 226 Ill. 447, distinguished.)

5. SAME—*use of word "revert" does not necessarily indicate
that gift is not vested.* The fact that a will provides that in case
of the death of the *cestui que trust* before the interest of the estate
"hereby set apart for his benefit" shall have been paid over to him
by the trustees, then said interest shall "revert to and become a
part of the residue of my estate," does not necessarily indicate an
intention on the part of the testator that the interest of the *cestui
que trust* should not vest at the testator's death.

APPEAL from the Circuit Court of Winnebago county;
the Hon. ROBERT W. WRIGHT, Judge, presiding.

This is a bill in chancery filed by appellee, alleging that George A. Mix died in Rockford, Illinois, June 29, 1907, leaving as his heirs-at-law his children, Arthur H. Mix, George H. Mix and Elsie H. Mix, and his grandchild, John Mix Armstrong, the only child of his deceased daughter, Mary, who died June 10, 1907, and further alleging that said George A. Mix died leaving a will, dated June 20, 1907, which was afterward admitted to probate. The bill prayed that said will be found void as creating a perpetuity, and that testator be declared to have died intestate.

The material parts of the will necessary to be considered are as follows: The first clause directed that all just debts be fully paid and discharged as soon as practicable after decease. The second and third clauses read:

"*Second*—I hereby create my sister, Mary J. Barber, and my son George H. Mix, trustees under this will, and *I hereby give, devise and bequeath to the said Mary J. Barber and the said George H. Mix, as such trustees, under the terms and conditions hereof, all of my property,* of every kind and nature and wheresoever situated. The terms and conditions under which this trust and trusteeship shall be, are as follows:

"(*a*) For the purpose of discharging my just debts and for the further purpose of changing the form of my investments, I hereby give and grant to my said trustees the unconditional power and authority to sell and dispose of any of my property, and to make, execute and deliver any and all instruments of conveyance necessary to carry into effect said power of sale and disposition.

"(*b*) The said trustees shall take and set apart five thousand dollars ($5000) of my estate and shall keep the said amount invested for the benefit of my grandchild, John Mix Armstrong, the son of my deceased daughter, Mary C. Armstrong. Said trustees shall pay, turn over and deliver the income arising from said five thousand dollar ($5000) fund for the benefit of my said grandchild or

to his guardian, such payments to be made at least once a year but not oftener than at the end of each and every six (6) months, *computing from the date of the probate of this will,* and continuing until the date when my said grandchild, John Mix Armstrong, shall have arrived at the age of twenty-one (21) years. If my said grandchild, John Mix Armstrong, shall live to the age of twenty-one (21) years, then my said trustee shall turn over and pay to him, the said John Mix Armstrong, the said sum of five thousand dollars, ($5000,) and the same shall then become the absolute property of my said grandchild. In case he, my said grandchild, shall die before he arrives at the age of twenty-one (21) years, then in that event the said sum of five thousand dollars ($5000) *shall revert to and become a part of the residue of my estate.*

√ "(c) *All the rest, residue and remainder of my estate,* after the payment of my debts and the setting aside of the said five thousand dollar ($5000) fund last above mentioned, *shall be held, managed, controlled and invested or re-invested by my said trustees for the period of not to exceed ten (10) years from and after the probate of this will. All of the income arising from said residue,* after the payment of the necessary expenses and a reasonable compensation to my said trustees for their services, shall be paid out by them as follows: One-third (⅓) thereof to my son Arthur H. Mix, one-third (⅓) thereof to my son George H. Mix, and one-third (⅓) thereof for the use, benefit, support and education of my daughter, Elsie H. Mix, *such payments to be made at the end of each and every six (6) months' period, dating from the probate hereof.*

"(d) Should my said trustees deem it wise so to do, they shall have the power, authority and discretion to *absolutely and without condition turn over, deliver and pay, at any time after five (5) years from the probate of this will and prior to the expiration of the ten (10) year period above fixed,* one-third (⅓) of the said residue of my es-

tate to my son George H. Mix, and also one-third (⅓) thereof to my said daughter, Elsie H. Mix. My said trustees are hereby authorized and empowered to pay and turn over to my said son Arthur H. Mix, *at any time after five (5) years from the date of the probate hereof,* any part or all of the remaining one-third (⅓) *of said residue* of my estate which is *held for his benefit* under the terms hereof, when in the discretion of my said trustees it shall seem to them wise so to do and shall be for the best interests of my said son Arthur, it being my hope that he will prove himself so worthy that my said trustees shall deem it wise to turn over to him at the earliest possible moment that portion of my estate *set apart for his benefit.* If the one-third (⅓) of said residue of my estate *hereby set apart* for my daughter, Elsie H. Mix, and the one-third (⅓) of the said residue of my estate *set apart* for my son George H. Mix, have not been turned over and delivered to them after the expiration of five (5) years and before the expiration of ten (10) years after the probate of the will, then at the expiration of the said ten (10) years' period the trust hereby created with reference to said two one-third (⅓) interests shall terminate, and one-third (⅓) of said residue of my estate shall at once be turned over, delivered and paid, absolutely and unconditionally, to my said daughter, Elsie H. Mix, and a like amount shall at the same time be turned over, delivered and paid, absolutely and unconditionally, to my son George H. Mix.

"*Third*—In case of the death of my said son Arthur H. Mix before the interest of my estate *hereby set apart* for his benefit shall have been turned over and paid to him unconditionally by my said trustees, then said interest shall *revert to* and become a part of the residue of my estate. In case of the death of my said daughter, Elsie H. Mix, before the *interest in my said estate hereby set apart* for her benefit shall have been paid and turned over to her by my said trustees, said interest *shall revert to* and become

a part of the *residue* of my estate. Should my son George H. Mix die before receiving the one-third *interest of said residue,* then the portion of my estate hereby *set apart* for him shall be payable to and become the property of his children. Should my daughter, Elsie H. Mix, die before receiving *her interest* in my said estate, leaving a child or children surviving her, then in that event said interest shall be paid to and turned over to such child or children; and should my son Arthur H. Mix die before receiving the *portion of my estate hereby set apart for his benefit,* leaving him surviving a child or children, then in that case said *interest or share* shall be turned over and paid to said child or children; but in no event shall any of such interests or shares be turned over to any such child or children, either of my said son George, my said son Arthur or my said daughter, Elsie, prior to the expiration of the ten (10) year period above mentioned."

The fourth clause nominated and appointed testator's sister, Mary J. Barber, and his son George H. Mix, executors without bond.

The words italicized above are the parts of the will which have a particular bearing on the issues as to the various constructions contended for.

The circuit court, December 5, 1908, entered a decree nullifying paragraphs 2 and 3 of the will as in violation of the rule as to perpetuities, and declared all portions of said will void except that part appointing said Mix and Barber executors and providing for the payment of debts. From this decree appellants have appealed to this court.

J. C. SEYSTER, W. P. FEARER, and R. K. WELSH, for appellants:

Vested interests, legal or equitable, are not subject to the rule against perpetuities. Gray on Perpetuities, par. 205; *Lunt* v. *Lunt,* 108 Ill. 313; 22 Am. & Eng. Ency. of Law, 705.

An estate is vested when there is an immediate right of present enjoyment or a present fixed right of future enjoyment. *Pearson* v. *Hanson,* 230 Ill. 610; *Flanner* v. *Fellows,* 206 id. 136.

The law favors the early vesting of estates, and it is a rule of construction that estates, legal or equitable, will always be regarded as vesting immediately, unless the testator has by very clear words manifested otherwise. *Scofield* v. *Olcott,* 120 Ill. 362; *Flanner* v. *Fellows,* 206 id. 136; *Harvard College* v. *Balch,* 171 id. 275; *Kohtz* v. *Eldred,* 208 id. 60.

Whether a remainder is vested or contingent depends on the language employed. If the conditional element is incorporated in the description of the gift to the remainderman it is contingent; but if, afterwards giving a vested interest, a clause is added divesting it, then the remainder is vested. Gray on Perpetuities, sec. 108; *Brechbeller* v. *Wilson,* 228 Ill. 502; *Ducker* v. *Burnham,* 146 id. 23.

An interest is not obnoxious to the rule against perpetuities because it may continue after a life or lives in being and twenty-one years. It is sufficient if it begins within that time. If it were otherwise, all conveyances of fee simple estates would be void. Gray on Perpetuities, 198; *Madison* v. *Larmon,* 170 Ill. 65; *Flanner* v. *Fellows,* 206 id. 136.

Though a will does not become effectual until probated, yet when probated it relates back to the death of the testator, so as to vest title immediately upon the death. 30 Am. & Eng. Ency. of Law, 136; *Graves* v. *Graves,* 90 Wis. 306; *Richards* v. *Pierce,* 44 Mich. 444; 3 Redfield on Wills, 23; *Coggshall* v. *Home,* 18 R. I. 696; *Goodman* v. *Winter,* 64 Ala. 410; *Allison* v. *Smith,* 16 Mich. 405; *Sutphen* v. *Ellis,* 35 Mich. 446; *Barnard* v. *Bateman,* 76 Mo. 414.

Where the interest or income is payable to the legatee or devisee it shows that a present gift is intended, and the estate vests in interest at the death of the testator. *Carter*

v. *Carter,* 234 Ill. 514; Kales on Future Interests, sec. 218; Theobald on Wills, (2d ed.) 412; *Hanson* v. *Graham,* 6 Ves. Jr. 249; *Cropley* v. *Cooper,* 19 Wall. 167; 2 Jarman on Wills, 461, 462; 2 Redfield on Wills, 613.

E. P. LATHROP, and ROBERT LATHROP, for appellee:

Any limitation or condition which may take away or suspend the absolute power of alienation for a period beyond the continuance of a life or lives in being and twenty-one years thereafter creates a perpetuity, whether called by such name or called a restraint on alienation. 1 Perry on Trusts, sec. 377; *Bigelow* v. *Cady,* 171 Ill. 229; *Lawrence* v. *Smith,* 163 id. 149; *In re Walkerly,* 108 Cal. 607; *Reid* v. *Voorhees,* 216 Ill. 236; *Waldo* v. *Cummings,* 45 id. 421; *Knox* v. *Jones,* 47 N. Y. 389.

A perpetuity is created "when if all that have interest join, yet they cannot pass the estate." 1 Perry on Trusts, sec. 377; *In re Walkerly,* 108 Cal. 607.

The mere power of sale in trustees will not relieve the trust estate from the perpetuity, where distribution of the *corpus* of the fund cannot take place for a period held to be in violation of the rule. *In re Walkerly,* 108 Cal. 607; *Haynes* v. *Sherman,* 117 N. Y. 433; *Reid* v. *Voorhees,* 216 Ill. 236; *Bigelow* v. *Cady,* 171 id. 229.

A devise to have and to hold from and after the probate of a will is void as a perpetuity, because there is a possibility that the will may not be probated within the limits of the rule. *Johnson* v. *Preston,* 226 Ill. 447.

If the general scheme of the will is that the estate shall be kept entire for an unlawful period no part of the provisions can be sustained, and the estate to which the void provisions relate vests in the heir. *In re Johnston's Estate,* 185 Pa. St. 179; *McSorley* v. *Leary,* 4 Sand. 414; *Barnum* v. *Barnum,* 26 Md. 119; *Deford* v. *Deford,* 36 id. 178; *Missionary Society* v. *Humphreys,* 91 id. 131.

The rule against perpetuities is a peremptory command of law. It is the duty of courts to give it effect, and not to destroy its efficacy by adverse construction. *Lawrence* v. *Smith*, 163 Ill. 149; *Coggin's Appeal*, 124 Pa. St. 10; Gray on Perpetuities, sec. 629; *Reid* v. *Voorhees*, 216 Ill. 236.

A perpetuity will no more be tolerated when covered by a trust than when it displays itself undisguised in the settlement of a legal estate. Lewin on Trusts, 97; Gray on Perpetuities, sec. 202; *Bigelow* v. *Cady*, 171 Ill. 229; *Howe* v. *Hodge*, 152 id. 253; *In re Johnston's Estate*, 185 Pa. St. 179; *In re Walkerly*, 108 Cal. 627; *Eldred* v. *Meek*, 183 Ill. 26.

Where future interests are devised not directly, there being no original gift but only a direction to trustees to pay, distribute or divide at a future time, vesting will ordinarily be postponed until the time of payment, distribution or division. 2 Jarman on Wills, 840; *Leake* v. *Robinson*, 2 Meriv. 363; *Clarke* v. *Shawen*, 190 Ill. 56; *Eldred* v. *Meek*, 183 id. 37; *In re Baer*, 147 N. Y. 348; *Smith* v. *Edwards*, 88 id. 92; *Herzog* v. *Guaranty Co.* 177 id. 86; *Bennett* v. *Bennett*, 217 Ill. 434.

Where an invalid trust constitutes part of an entire scheme, so that its rejection would defeat the presumed wishes of the testator or result in injustice to some beneficiary, then all provisions relating to it must be held invalid. *Tilden* v. *Green*, 130 N. Y. 50; *Lawrence* v. *Smith*, 163 Ill. 149; *Eldred* v. *Meek*, 183 id. 26; *Reid* v. *Voorhees*, 216 id. 236; *Pitzel* v. *Schneider*, 216 id. 87; *Benedict* v. *Webb*, 98 N. Y. 466; *In re Walkerly*, 108 Cal. 607.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellants contend that the legal title to the property vested in the trustees, and that the equitable title to the residue, after the payment of debts and the $5000 legacy to appellee, vested in the testator's children at his death, and

that the will is valid in all respects. If the title did so vest, then the will is not obnoxious to the rule on perpetuities, as vested estates are not subject to this rule. Gray on Perpetuities, (2d ed.) sec. 205; *Lunt* v. *Lunt,* 108 Ill. 307.

"An estate is vested when there is an immediate right of present enjoyment or a present fixed right of future enjoyment." (*Flanner* v. *Fellows,* 206 Ill. 136; *Pearson* v. *Hanson,* 230 id. 610; *Scofield* v. *Olcott,* 120 id. 362.) The rule as to perpetuities has been thus defined: "No interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest." (Gray on Perpetuities,—2d ed.—sec. 201; *Quinlan* v. *Wickman,* 233 Ill. 39.) A perpetuity has been stated to be: "Any limitation tending to take the subject of it out of commerce for a longer period than a life or lives in being and twenty-one years beyond, and, in case of a posthumous child, a few months more, allowing for the term of gestation." (2 Bouvier's Law Dict. 326; *Flanner* v. *Fellows, supra.*) The rule is against the postponement of the vesting of estates and not against the postponement of possession. An interest which *begins* within lives in being and twenty-one years thereafter, although it may *end* beyond them, does not come within the rule. Gray on Perpetuities, (2d ed.) sec. 232; *Flanner* v. *Fellows, supra; Madison* v. *Larmon,* 170 Ill. 65.

The devise to the trustees must be held valid, as it is an immediate devise of all the testator's property. We find nothing in the will to indicate that the gift is not to take effect in the trustees until ten years after probate. Even if it be conceded that the trusteeship may, in the discretion of the trustees and over the objections of the *cestui que trust,* last ten years from the probate of the will, that does not make the gift to the trustees void. The estate in the trustees vested in interest and possession at the death of the testator, and therefore the rule invoked by appellee has

no application. The probate or letters testamentary, when granted, relate back to the date of a testator's death and validate acts done by an executor before he qualified. The probate merely furnishes the means of establishing by record evidence the validity of an existing right. *Richards* v. *Pierce,* 44 Mich. 444; 11 Am. & Eng. Ency. of Law, (2d ed.) 907; 3 Redfield on Wills, *23.

Counsel for the appellee earnestly insist that such a construction placed upon this will is in conflict with our holding in *Johnson* v. *Preston,* 226 Ill. 447. We think otherwise. That case can be readily distinguished from the one before us. There the executor was "to have and to hold for the space of twenty-five years from and after the probate of this will," etc., and the will distinctly provided that there should be no power of sale or alienation of the land during said twenty-five years, either by the executor, as trustee, or by the beneficiaries, except transfers between the beneficiaries themselves. In this case the executors, as trustees, were invested from the date of the death of the testator with unconditional power and authority to sell and dispose of any of the property, and to execute and deliver any and all instruments of conveyance necessary to carry into effect said power of sale and disposition. Not only was that will worded very differently from the will in this case as to the title vesting in the trustees, but the construction placed on the will in that case carried out substantially the wishes of the testator, whereas if the construction contended for here by appellee be upheld, the testator's intention will be absolutely defeated. The paramount rule in the exposition of wills, to which all others must bend, is, that the intention of the testator as expressed in the will must be ascertained and given effect if not prohibited by law. (*Bradsby* v. *Wallace,* 202 Ill. 239; *Wardner* v. *Memorial Board,* 232 id. 606.) So far has this principle been carried, that this court quoted with approval in *Orr* v. *Yates,* 209 Ill. 222, that "cases on wills may guide us to

general rules of construction, but unless a case cited be in every respect directly in point and agree in every circumstance it will have little or no weight with the courts, who always look upon the intention of the testator as the polar star to direct them in the construction of wills." (See, also, to the same effect, *Smith* v. *Bell*, 6 Pet. 68.) The legal title under the will having vested in the trustees at the date of the death, all the reasoning in *Johnson* v. *Preston, supra,* tends to uphold the conclusion that the equitable title vested in the children of testator at the same date.

What was said by this court in *Harvard College* v. *Balch*, 171 Ill. 275, not only upholds the conclusion that the legal title vested in the trustees, but the conclusion, also, that the equitable title vested, at the date of the testator's death, in his children, and that such vesting was not postponed until the time of distribution. The law always gives preference to vested over contingent estates. "Where, in the construction of a clause, there is a doubt as to the point of time it was intended the estate should vest, the earliest will be taken." (*Kellett* v. *Shepard*, 139 Ill. 433.) It has long been the settled rule of construction in the courts that estates, legal or equitable, given by will should be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent on a future event. (*Grimmer* v. *Friederich*, 164 Ill. 245.) The contention of appellee that the vesting of the equitable interests is postponed until ten years after the probate is certainly not clearly expressed in the will.

While the rule is general that where there are no words importing a gift, other than to the executors or trustees to divide or pay at a future time, the legacy is contingent, still, if the payment is postponed for the convenience of the funds of the estate and not for reasons personal to the legatee or devisee, it should be held vested. (*Knight* v. *Pottgieser*, 176 Ill. 368; *Carter* v. *Carter*, 234 id. 507; 30 Am. & Eng. Ency. of Law,—2d ed.—771.) The record shows

that the personal property at the death of the testator was not sufficient to pay the indebtedness against his estate. It is reasonable to assume that the testator did not wish to compel the immediate sale of all his real estate, but intended to provide that the executors could sell such portion of it as was necessary to pay debts and to hold the remainder until in their judgment it was wise to sell. Taking into consideration the relation of the parties, the nature and situation of the subject matter, the purpose of the testator as shown in the will and the motives which might be reasonably supposed to influence him in the disposition of his property, we do not think there is anything in this record that compels the conclusion that the postponement was on account of the position of the legatees. On the contrary, we think it may be held that such postponement was for the convenience of the funds of the estate.

The general rule referred to, that where there are no words importing a gift otherwise than a direction to divide or pay legacies at a future time such a legacy is contingent, is usually applied where the gift is to a class, but the court will hesitate in applying it where the gift is to legatees by name, as in this will. (30 Am. & Eng. Ency. of Law,—2d ed.—773; *Carter* v. *Carter, supra; Howe* v. *Hodge,* 152 Ill. 252.) The absence of words of immediate gift will not be held conclusive in deciding whether a gift or devise is vested or contingent. The rule on this question is flexible, and does not govern where the wording of the entire will indicates that it was the testator's intention that the devise or gift was to vest at his death. A gift of the whole of the interest or income from a legacy vests the principal at the testator's death. (Kales on Future Interests, sec. 218; *Carter* v. *Carter, supra;* Theobald on Wills,—6th ed.—564; 2 Underhill on the Law of Wills, sec. 872; 2 Redfield on Wills,—3d ed.—*233; 30 Am. & Eng. Ency. of Law,—2d ed.—786.) The income from the residuary clause under this will was directed to be paid to the lega-

tees from the date of the testator's death until the payment of the legacy.

Another circumstance in this will that is strongly persuasive in favor of the vesting of the equitable interests in the testator's children at his death is, that such legacies were created by the residuary clause in the will. "The presumption which arises from the fact of the execution of a will, that the testator in making it did not mean to die intestate as to any portion of his property, strengthens the presumption in favor of the vesting of gifts when the gift is a disposition of a residue. Language which ordinarily would be construed as creating contingent gifts, if employed in relation to specific legacies or devises or particular gifts not included in a general or residuary clause, will, in the case of a residuary clause, be construed as creating vested interests." 2 Underhill on the Law of Wills, sec. 862; 30 Am. & Eng. Ency. of Law, (2d ed.) 793; Theobald on Wills, (6th ed.) p. 563.

All parties to this litigation seem to agree that the legacy to the grandson, James Mix Armstrong, the appellee herein, is valid, and therefore the provisions of the will referring thereto need not be considered.

The beneficial interests created in Arthur, George and Elsie by paragraphs (*c*) and (*d*) of clause 2 of the will are valid. They are present absolute interests, taking effect on the testator's death and subject to gift over, as indicated in clause 3 of the will. These children get one-third, each, of all the net income of the residue from testator's death, which is to be paid to them at the end of every six months from the date of probate. The fact that the probating of the will was to be taken as the date from which the distribution of the income and the paying over of the principal was to be figured in no way affects the time when the title vested in the children. In paragraph (*d*) the testator speaks of the shares "set apart" for Arthur, George and Elsie. This indicates that he considers them as having

a present, and not a future or presumptive, interest. In clause 3 of the will, in referring to Arthur's share, the words, "the portion of my estate set apart for" him and the "interest set apart for" Elsie's benefit, and again, in the same clause, the use of the word "residue" if the children died before the period of distribution, are all strongly persuasive that the preceding gifts to Arthur and Elsie were present interests, vesting at testator's death.

Appellee contends that the use of the word "revert" in the third clause indicates that the testator did not intend that the equitable interest of the children should be vested by the residuary clause. The Standard Dictionary defines "revert:" "to return, come or fall back." Various meanings have been given this word in *Lewis* v. *Lewis,* 114 Iowa, 399, *Ingraham* v. *Ingraham,* 169 Ill. 432, and *Johnson* v. *Askey,* 190 id. 58. It is evident from these decisions that the meaning of the word must depend very largely on the connection in which it is used. We are disposed to hold that the testator meant here that the interest of the children referred to should "revert" to the residuary fund, to which he had referred in a former clause.

All the reasons for holding that George and Elsie take a present interest at testator's death are alike applicable to Arthur's one-third. If it be conceded that as to Arthur's share the trusteeship, in the discretion of the trustees, may last longer than ten years from the probate, and even during Arthur's whole life, still that does not render the provisions void, because his interest vested, as did those of George and Elsie, at the date of testator's death. If it be argued that this might create an indestructible trust in the trustees, the answer is as suggested in Gray on Perpetuities, (2d ed. sec. 121*f*,) that this does not violate the rule against perpetuities, as that rule "is concerned only with the beginning of interests;" that said rule "settles the time within which interests must vest, but when once vested they are all, present and future alike, subject to the same restraints

against alienation, and with this the rule against perpetuities has nothing to do." In England the creation of such indestructible trusts of such absolute equitable interests is not permitted. (*Saunders* v. *Vautier,* 4 Beav. 115; *Harbin* v. *Masterman,* (1894,) 2 Ch. 184; *Weatherall* v. *Thornburgh,* 8 Ch. Div. 261; Gray on Restraints on Alienation,— 2d ed.—secs. 105-112.) In this State such trusts have been permitted. (*Lunt* v. *Lunt, supra.*) The authorities in this and other jurisdictions bearing on this question are reviewed at some length in Kales on Future Interests, sections 286 to 296, inclusive. Once such trusts are permitted, it follows that there must be some limits as to the length of time they can be made to last. It is suggested in Gray on Perpetuities, (2d ed. sec. 121*i,*) that it is perhaps likely that the same period as that prescribed by the rule against perpetuities should be taken, but the author adds that it is open to the courts to adopt some other period, if found advisable. There are intimations in some of the authorities that, in a case like the present, any provision which permits the trustees to retain property in trusteeship for ten years from the probate of the will is wholly void, the trusteeship, however, still remaining, with the difference that instead of being indestructible the beneficiaries who are of age and who have an absolute indestructible equitable interest may compel the trustees to transfer the legal title to them although the time specified in the will for the termination of the trust has not arrived. This court, in *Kohtz* v. *Eldred,* 208 Ill. 60, has stated that such a trust will terminate as soon as the object for which it was established has been accomplished. The question when this trust may end is, however, not necessary for the decision in this case. Admitting, as most favorable to appellee's contention, that the probate of this will might have been long delayed, still that does not in any way militate against the legal and equitable interests vesting thereunder immediately upon the death of the testator. At most, the failure to probate

promptly could only delay the distribution of the funds, and such distribution, as we have pointed out, could be controlled by the courts under the rules governing restraints on alienation of property. ✓

In the consideration of wills the courts may look at the circumstances under which the devisor makes his will, the state of his property, his family, and the like. (*Ingraham* v. *Ingraham, supra; Strain* v. *Sweeny,* 163 Ill. 603; *Wardner* v. *Memorial Board, supra.*) Construing this will in the light of these surroundings, the testator's intention is clear that the legal title was to vest in his trustees and the equitable title to the residuary fund in his three children at his death.

The decree of the circuit court must be set aside and the cause remanded to that court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*