RANDOLPH S. WARNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54109.   Promulgated August 18, 1933.

*Harley E. Peters*, Esq., and *James I. Boulger*, Esq., for the petitioner.

*M. B. Leming*, Esq., and *John R. Gaskins*, Esq., for the respondent.

**OPINION.**

MARQUETTE: The respondent has determined a deficiency in income tax for 1927 in the amount of $25,660.48. The principal issue is whether the proper basis for the computation of gain or loss arising from the sale of certain stocks acquired from the estate of a decedent is their fair market value at the date of the decedent's death, or their fair market value at the time of distribution. A similar question is presented as to the stocks purchased by the executors. The petitioner insists that his interest in the decedent's estate was contingent and therefore he did not acquire the stocks until the contingency was resolved. The solution of these issues involves the application of section 204 (a) (5) of the Revenue Act of 1926. The facts were stipulated.

From the stipulation it appears that Randolph S. Warner, a resident of Ohio, died testate on October 4, 1921. His will was admitted to probate by the probate court of Franklin County, Ohio. The testator left two sons, William D. Warner and Randolph S. Warner, Jr., the petitioner. At the date of execution of the will each of his sons was married and had heirs of his body, all of whom survived the distribution of the residuary estate. The material portions of the will are as follows: Item I directs the executors to pay all the testator's debts and funeral expenses as soon after his death as shall by them be found convenient. The pertinent parts of items VII, VIII and IX are as follows:

ITEM VII. I give and devise to my said two sons, William Deshler Warner and Randolph S. Warner, Jr., their heirs and assigns, the home wherein I now reside, being the real estate devised to me by my deceased wife, Mary Deshler Warner, situated at the north-west corner of East Broad Street and Lexington Avenue, and being Lots Nos. 9, 10, 11 and 27 feet off the east side of Lot No. 8, of East Park Place Addition to the City of Columbus, Ohio, and known as No. 640 East Broad Street, Columbus, Ohio; Provided, however, that my said sons, or either of them, shall not sell, transfer or assign said real estate, or any part thereof, at any time within five years from my decease, and shall not, except as hereinafter provided, lease, or sub-let the same within said five year period, after which they can use their own discretion as to lease or sale of said premises.

Provided, further, that my said son, William Deshler Warner, shall have the right to use and occupy said premises, together with all its furnishings, of every kind and description belonging to me, as his residence for said period of five years from and after my decease, and to use all automobiles, tools and supplies belonging to me on, or in connection with said premises, paying as rental therefor at the rate of Twelve hundred Dollars ($1200.00) per year, and in addition thereto the taxes and assessments that may become due and payable thereon during said five year period. In the event of William Deshler Warner's decease during said five year period, or should he choose not to exercise the right to so occupy said premises, or to continue to exercise said right during said entire period, then my said son, Randolph S. Warner, Jr., shall have the right to so occupy and use said premises as his residence during the remainder of said five year period, and to exercise and enjoy all the other rights hereinabove mentioned, and subject to the same terms and conditions as hereinabove provided. Should neither of my said sons choose to so occupy said premises at any time during said period, they shall have the right to lease or sub-let same for residence purposes only, for any period up to five years from date of my decease, sharing equally in the rentals therefrom. * * *

ITEM VIII. All the rest and residue of my estate, both real and personal, wheresoever the same may be situated, I give, devise and bequeath unto my Executors hereinafter named, who shall be Trustees for the purposes herein set forth, to have and to hold the same, and to receive the income therefrom, for and during the period of five years from and after my decease. Said income, after deducting the expenses incurred incident to my estate, shall each month be divided equally between my two sons, William Deshler Warner and Randolph S. Warner, Jr., share and share alike, or, in case of the death of either or both of my said sons, then to their heirs per stirpes.

Believing that the property disposed of in this ITEM is invested to the best interests of my Estate, it is my desire that my Executors shall not dispose of any part thereof during said five year period after my decease, or change the form of any of my said investments during said period; provided, however, if the best interests of my estate shall, in their sound judgment, require it, my said Executors are hereby empowered to dispose of any of said property and investments, and reinvest the proceeds therefrom at their sound discretion, said principal investment, to be held under the provisions of this ITEM.

At the expiration of said five year period from and after my decease, said Trust shall terminate and cease, and all said rest and residue of my Estate, by this ITEM disposed of, shall be by my Executors distributed and turned over in kind to my said two sons, William Deshler Warner and Randolph S. Warner, Jr., share and share alike, the same to become their property, absolutely and in fee simple. In case either or both of my said sons shall die during said five year period, then the share or shares of the one or ones so dying shall go to his or their respective heirs of the body.

My said Executors are hereby authorized and empowered to make, execute and deliver all necessary and proper deeds and other instruments of conveyance, and to do all things necessary or proper, without legal proceedings first had, for carrying out the powers and duties hereby in this ITEM conferred.

ITEM IX. I hereby nominate, constitute and appoint, William Deshler Warner, Randolph S. Warner, Jr., and William C. Willard, executors of this my last will and testament, and direct that said William C. Willard be paid the sum of Five Hundred Dollars ($500.00) per year, during the five year period following my decease, or for such part thereof as he may act as my Executor, and that said William Deshler Warner and Randolph S. Warner, Jr., shall act without compensation; hereby authorizing and empowering my said Executors to extend, compromise, collect, release and discharge, upon such terms and in such manner as they may deem for the best interests of my estate, all debts and claims due to or from me; and I also confer upon them all such other additional powers and authority as may be necessary to do and perform any act or thing for the purpose of carrying out the provisions of this my will, although not herein expressly named, and to that end to sell at private or public sale, at such prices, and upon such terms of credit or otherwise, as they may deem best, and without first obtaining leave of Court the whole, or any part of my real estate or personal property, and to acknowledge, execute and deliver deeds and other proper instruments of conveyance thereof to the purchaser or purchasers; provided, however, the home property devised in ITEM VII shall not be sold by my Executors unless and until all the rest of my Estate has been disposed of and then only in the event that it is necessary to sell the same to carry out the provisions of ITEM I hereof.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

I direct that no bond be required of my Executors, and request that no Inventory or Appraisal of my estate be made.

The nominated executors qualified. William C. Willard resigned and Daniel H. Sowers was appointed in his stead. The executors received as part of the estate of the testator certain stocks, the fair market value of which, both at the death of the testator and at the date of distribution, is stipulated. During the five-year period the executors bought other stocks, the cost and fair market value of

which, at the time of distribution, is also stipulated. The executors distributed the residuary on October 4, 1926.

The respondent has determined that the basis for the determination of petitioner's gain or loss arising from the sale of certain stocks is their fair market value at the death of the testator or their cost to the executors, depending on whether the executors acquired the stocks from the testator or by purchase. If the interests of the petitioner and his brother were vested as of the death of the testator, the respondent must be affirmed. *Brewster* v. *Gage*, 280 U.S. 327; *Rodman E. Griscom*, 22 B.T.A. 979; *Estate of Francis Abeles*, 24 B.T.A. 435; *William Huggett*, 24 B.T.A. 669; affd., 64 Fed. (2d) 705; *Isabelle Richardson Molter*, 27 B.T.A. 442.

The petitioner insists that his father did not bequeath to him any of the stocks which he sold and that his only right to them was derived from the testator's direction to his executors that at the end of the five-year period they distribute and turn over in kind the residuary estate to him and his brother and that their rights are further limited by the provision that if either be dead at the expiration of the period his share shall go to the heirs of his body. He also points to the fact that if either die during the period his share of the income shall go to his heirs. He seeks to apply the rule that where there are no words of gift, other than a direction to the executors or trustees to pay or divide at a future time, a gift is contingent and not vested.

Whether these interests were vested or contingent must be determined under the laws of Ohio, where the testator resided and where his will was probated. *Isabelle Richarson Molter*, *supra; Pringle* v. *Commissioner*, 64 Fed. (2d) 863. If instead of a direction to pay or divide the testator had bequeathed to his sons. the corpus of the estate after the termination of the five-year period, there is no doubt that under decisions of the Ohio courts each would have taken a vested remainder subject to be divested by death before the end of the period. *Collins* v. *Collins*, 40 Ohio St. 353; *Millison* v. *Drake*, 123 Ohio St. 249; 174 N.E. 776. Thus it is evident that if the rule of pay or divide is not applicable, the petitioner's contention must fail.

It should be noted at the outset that the rule relied upon is not a rule of property but one of construction, which is to be applied, if at all, only as an aid to interpretation and not to override the intention of the testator. *Barr* v. *Denney*, 79 Ohio St. 358; 87 N.E. 267; *Fulton Trust Co.* v. *Phillips*, 218 N.Y. 573; 113 N.E. 558. The rule has many qualifications. Thus, the fact that all the income arising before the distribution is given to the one ultimately entitled to the corpus should be given great weight as indicating an inten-

tion to vest the interest. *Vanderpoel* v. *Loew*, 112 N.Y. 181; 92 N.E. 484; *Fulton Trust Co.* v. *Phillips, supra; Armstrong* v. *Barber*, 239 Ill. 389; 88 N.E. 246. See also on this point *Irwin* v. *Gavit*, 268 U.S. 161; *Commissioner* v. *Field*, 42 Fed. (2d) 820. Further, where the payment of the legacy is postponed not for reasons personal to the legatee, but for the convenience of the estate, the presumption is that the testator intended that the gift should vest. *Carper* v. *Crowl*, 149 Ill. 465; 36 N.E. 1040, and authorities cited. *Armstrong* v. *Barber* and *Barr* v. *Denney*, both *supra*. So also a distinction is to be drawn where the direction to pay over is to a named individual and not to a class to be thereafter determined. *Armstrong* v. *Barber, supra.* Lastly, the law favors that construction which will vest an interest. *Linton* v. *Laycock*, 33 Ohio St. 128.

Our task is to discover if we can what was the intention of the testator; first, from the words of his will and, if doubt arises, then by applying the rules above set forth as an aid in arriving at the proper interpretation. The testator was survived by two sons, both married and both having children. These sons, and not a class to be subsequently ascertained, were named as beneficiaries. He nominated them, together with a third person, to be executors of his will and endowed them with extensive powers, thus evidencing his confidence in their integrity and business ability. Thus it appears that the provision for the five-year period was not caused by any reason personal to the sons. The reason for this particular provision must be looked for elsewhere. By item VII the testator disposed of his residence, which had been devised to him by his wife and concerning which he made most elaborate provisions. This property was not to be leased for five years after his death except for residence purposes. It was not to be sold during this same period except as provided in Item IX, where the executors are given power of sale and where it is directed that this property shall not be sold until all the rest of the testator's estate shall have been disposed of, and then only for the purpose of paying his debts.

The insertion in item VII of the same five-year period which we find in item VIII, coupled with the directions in item IX, indicates that the testator was concerned but with the settlement and administration of his estate and especially the preservation of his home place. The testator conferred on his sons and the third person, as executors, the legal title to the whole of his residuary estate and, having done this, he provided that his sons should be paid monthly the net income from the property. They and another, in the capacity of executors, were vested with the legal title, and the sons alone with the equitable title, to the property during the whole five years.

We have here no elaborate trust. The executors were to act as trustees, and then only for five years. We think that the five-year period was provided by the testator for the protection of his estate, to give his executors breathing time and to relieve them from applying to a court for extensions of time within which to settle; and that the whole scheme was a method marked out by the testator for the administration of his estate and not for the purpose of setting up a continuing trust. So, far from distrusting his sons' capacity to manage and dispose of their interests, he vests them with wide authority. Instead of postponing their right to enjoyment, he gives them all the income arising during the period. It seems clear that the will shows an intention to vest each son with his share.

With minor differences the situation here is not unlike that involved in *Brewster* v. *Gage* and *Estate of Francis Abeles*, both *supra*. That the interest of the petitioner might have been divested by his death during the five years does not alter the fact that it was vested and, having survived the period, he acquired the stocks owned by the testator as of the date of the death of his father. In *Tax Commission* v. *Commerce Guardian Trust & Savings Bank* (Court of Appeals of Ohio), 157 N.E. 423, the facts were that the testator directed his testamentary trustee to divide his residuary estate into three equal parts, one to be held for his wife, one for his son, and one for his daughter. The son was to receive all the income of his trust and when he arrived at the ages of twenty-five, thirty, and thirty-five he was to receive parts of the corpus. When he arrived at the age of forty the trust was to terminate and the trustee was to pay over and deliver to him all the then corpus of the trust, the same to be his thereafter absolutely. The trust for the daughter was similar except that the payments to her were to be governed by the age of the son. If either child died without issue before the termination of the trusts, the remaining part of the corpus of his or her interest should pass to the survivor; if the one so dying left issue, then, under certain conditions, to his or her issue; and if both children died without issue before the termination of the trusts, then to the testator's heirs and distributees. The court held that there vested in the children at the death of their father the absolute right to two thirds of the estate, subject to be divested on the happening of the contingencies. We conclude that the petitioner possessed at the date of his father's death a vested interest in his share of the residuary estate; that, having survived the end of the period, he has not been divested thereof; and that on this point the respondent must be affirmed. What we have said relative to the stock owned by the testator applies to the stocks purchased by the executor.

In reaching this conclusion we have carefully considered the following cases on which the petitioner relies: *Sinton* v. *Boyd*, 19 Ohio

St. 30; *Richey* v. *Johnson,* 30 Ohio St. 288; *Hamilton* v. *Rogers,* 38 Ohio St. 242; *Barr* v. *Denney, supra; Biles* v. *Webb,* 118 Ohio St. 346; 161 N.E. 49. In each of these cases the court in reaching its conclusion looked to the intention of the testator as its guiding star. In some of these cases the will involved had provisions similar to those in the will before us, but they also had other provisions which were different. None of them is controlling in the case before us.

*Judgment will be entered for the respondent.*