HENRY A. CLELAND ESTATE COMPANY, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33585, 40890, 51197. Promulgated November 24, 1933.

*J. H. Amick, C.P.A.*, for the petitioner.
*James K. Polk, Esq.*, for the respondent.

OPINION.

MARQUETTE: The petitioner concedes that the basis for the computation of gain on the sale made in 1925 and of the loss suffered in 1927 is the same as if the gain or loss had been made or suffered by the beneficiaries under the will of Henry A. Cleland. Section 202 (c) (3) of the Revenue Act of 1921, sections 203 (b) (4) and (i), and 204 (a) (8) of the Revenue Act of 1926. The respondent has determined that the basis in this case is the fair market values of the petitioner's properties on March 1, 1913. See section 204 (a) (5) and (b) of the Revenue Act of 1926. The petitioner contends that the proper basis is the fair market values of the properties as of August 14, 1921, the date of the death of Hannah Maria Cleland.

The question for decision is when these beneficiaries " acquired " these properties. If the interests of the beneficiaries were vested as of the date of the death of the testator the respondent must be affirmed on this point. *Randolph S. Warner*, 28 B.T.A. 1178, and cases cited. Whether these interests were vested or contingent must be determined under the laws of Michigan, where the testator resided, his will was probated, and the real estate was located. *Isabelle Richardson Molter*, 27 B.T.A. 442; *Randolph S. Warner, supra; Pringle v. Commissioner*, 64 Fed. (2d) 863. For this reason, among others, *Louis Kalb*, 15 B.T.A. 886, on which the petitioner relies is not in point. That proceeding was decided under the laws of Wisconsin. Further, the deed there involved differs in many of its provisions from the will of Henry A. Cleland. Among the differences is the fact that the gift to the remaindermen made by the deed is found in the provision that after the termination of the life estate the trustees should convey the property to the remaindermen. Here the testator in disposing of the remainder interests uses the words " I give, devise and bequeath." There is nothing in the will which

indicates an intention on the part of the testator that the vesting of the remainder estates should be postponed. Only the right to possession was postponed. The devises and bequests were to named individuals. The rule of pay or divide has no application. Cf. *Randolph S. Warner, supra.*

Section 11531 of the Compiled Laws of Michigan (1916) provides:

Further estates are either vested or contingent:

They are vested when there is a person in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate;

They are contingent whilst the person to whom, or the event upon which they are limited to take effect, remains uncertain.

The named remaindermen under Cleland's will were persons in being who would have had an immediate right to the possession of the land on the ceasing of the estate of Hannah Maria Cleland. These remainder interests were therefore vested as of the date of the testator's death. Subdivision Fourth of the will contains no words importing a contingency, but, assuming that any or all these interests might have been divested by death before the expiration of the life estate, yet the fact remains that these interests were vested as of the testator's death, and, not having been divested, the remaindermen acquired the properties devised as of July 19, 1911, the date of the testator's death. This conclusion is in harmony with the decision in *McInerny* v. *Haase,* 163 Mich. 364; 128 N.W. 215. There the testator devised a farm to his wife for life, remainder to his daughter, and upon the death of the latter to a grandchild should she survive the daughter; if she did not survive the daughter, then to others. The court held that the granddaughter took a vested interest subject to be divested in case of her death before the death of the daughter.

On the question of the fair market value as of March 1, 1913, of the property sold in 1925 each party introduced two witnesses. All were real estate operators in Detroit and well qualified to express opinions as to such value. Their valuations differ widely. The petitioner's two witnesses placed such value at $100,000 and $103,600, respectively, while the respondent's two witnesses placed this value at $44,046 and $61,900. The witnesses testify as to many sales, but often do not state whether the property was or was not improved. From their testimony it appears that there was in this locality a gradual increase in value prior to 1913 and that business was approaching this section from the south, so that southerly lots would possess greater values than those farther north. Woodward Avenue was a more important thoroughfare than Columbia Street. In this mass of testimony we find two sales which we think have an im-

portant bearing on the then fair market value of the petitioner's property. One of these sales was of a lot fronting 26 feet on the west side of Woodward Avenue by a depth of 116 feet to an alley. This lot was 24 feet south of the north corner of the same block on which the petitioner's property was located. This property was sold on April 16, 1913, for $65,000, of which $5,000 represented the value of the improvements. The other sale, made April 5, 1912, was of the corner lot, which had a front of 51.12 feet on Woodward Avenue at a depth of 95½ feet and was bounded on the north and west by the petitioner's property. The sale was for $125,000, of which $18,000 to $20,000 represented the cost of improvements. Although the petitioner's property was not a corner lot it possessed elements of corner value. It fronted on the two streets. It had the advantage of the alley. It had potential value in that it cut off access to the alley from the corner lot. In our opinion the so-called two lots should be treated as a single tract. As such they were sold. After careful consideration of the evidence we have arrived at the fair market values set forth in our findings.

Having arrived at a greater value than that determined by the respondent, we are met by his contention that we should use as a basis not the fair market value of the property on March 1, 1913, but the then fair market value of the remaindermen's interests. This contention is denied on the authority of *Huggett* v. *Burnet*, 64 Fed. (2d) 705.

The only evidence as to the fair market value of the building known as the Cynthia Apartments was the testimony of two witnesses introduced by the petitioner. These witnesses valued this building as of March 1, 1913, at $23,909 and $25,000, respectively, and as of March 4, 1921, at $19,636 and $19,921. They based these valuations solely on computations in which the cubic contents of the building were multiplied by a factor representing the then value of a cubic foot. The witnesses did not agree on the values to be attributed to each cubic foot. One used a factor of 28 cents a cubic foot for 1913 value and of 31 cents for 1921 value, while the other used factors for the same years of 27 cents and 34 cents. Both deducted depreciation from the year 1896 at the rate of 2½ percent.

Section 204 (b) of the Revenue Act of 1926 calls for proof of "fair market value," that is, what a willing buyer would give and a willing seller would accept. This is quite a different thing from cost (*Burnet* v. *Houston*, 283 U.S. 223) and, of course, from reproduction cost, even after deducting accrued depreciation. We are not informed as to the physical condition of the building on the basic dates or its rent rolls. Obsolescence is a factor. We are not even given the independent judgment of the witnesses as to what

in their opinion was the then fair market value of the building. All that we have before us is the application of a hard and fast rule of thumb. Such evidence is not sufficient to overcome the determination of the respondent. *Rockford Malleable Iron Works*, 2 B.T.A. 817; *Huron Bldg. Co.*, 15 B.T.A. 1107; affd., 53 Fed. (2d) 575; *National Straw Works*, 16 B.T.A. 463; affd., 47 Fed. (2d) 844; *York Hotel Corp.*, 18 B.T.A. 162; *National Packing Corp.*, 24 B.T.A. 952. The respondent's determinations both as to value and as to the rate of depreciation on this building are sustained.

The petitioner's right to deduct from gross income for 1928 a net loss of 1927 will be determined upon final computation.

*Judgment will be entered under Rule 50.*