FIRST ILLINI BANK, Successor in Interest to First Galesburg National Bank and Trust Company, as Trustee for Olive F. Custer, Deceased, Petitioner-Appellee, v. LESTER T. PRITCHARD et al., Respondents-Appellants.

Third District    Nos. 3—91—0151, 3—91—0188 cons.

Opinion filed June 30, 1992.

Barash, Stoerzbach & Henson, of Galesburg (Barry M. Barash, of counsel), for Christopher N. Pritchard.

Lousberg, Kopp & Bonnett, P.C., of Rock Island (Peter H. Lousberg, of counsel), for John T. Pritchard, Sarah E. Pritchard, John C. Pritchard, Emily J. Pritchard, and Charles B. Pritchard.

H. Randolph Williams, Michael J. Wilczynski, and Francis D. Morrissey, all of Baker & McKenzie, of Chicago, for Janis Calais, Laurie D. Brunner, and Adrian H. Day.

JUSTICE HAASE delivered the opinion of the court:

Olive F. Custer executed her last will and testamentary trust on April 25, 1953. The document provides that upon her death, Ethyl Schmith (Custer's daughter), William Pritchard (Custer's grandson), and Sally Ann Day (Custer's granddaughter) would have life estates in the income of the trust. The document further recites that upon the death of the surviving life tenant, the corpus of the trust is to be delivered "[t]o my lineal descendants, share and share alike." Following the death of the last life tenant, the testator's descendants were unable to agree on the meaning of the words employed by Olive Custer. One group of beneficiaries (Calais Group) claims the words "share and share alike" mean the corpus is to be distributed *per*

*stirpes*. The second group of beneficiaries (Christopher Pritchard Group) contends the distribution is to be *per stirpes*, but that equal shares of the distribution must be determined at the level of descendants of the nearest degree of relationship to the testator. Finally, the third group of beneficiaries (John Pritchard Group) claims a *per capita* distribution is required. As a result of the parties' disputed interpretations of the trust, the trustee brought the present petition for instruction. Following several summary judgment motions and extensive arguments by the parties, the trial court ruled that a *per capita* distribution was intended. The Christopher Pritchard Group and Calais Group appeal.

Olive F. Custer died in 1956. In 1953, she executed a testamentary trust which is the subject of the present suit. The disputed provision of the trust provides as follows:

> "Upon the death of the survivor of ETHYL SCHMITH, SALLY ANN DAY and WILLIAM C. PRITCHARD, the Trust hereby created shall terminate, and the Trustee, after deducting its costs, expenses and reasonable compensation, shall thereupon transfer, pay over, deliver, assign and convey said Trust Estate and all accrued and all undistributed net income, *to my lineal descendants, share and share alike.*" (Emphasis added.)

The last of the named life tenants, Sally Ann Day, died on January 22, 1990. Following Day's death, the Custer descendants were unable to agree on the meaning of the words "[t]o my lineal descendants, share and share alike." The trustee, First Illini Bank, brought the present action asking the circuit court of Knox County for instruction on how to distribute the trust. Three groups of beneficiaries appeared before the trial court each advocating a different distribution of the trust. Each group filed motions for summary judgment, and the John T. Pritchard Group attached to its motion the discovery deposition of the attorney who drafted the will. The other groups objected to the deposition testimony and moved to strike. The court refused to strike the deposition. The court ruled the language of the will was ambiguous and the deposition was admissible in order to explain the ambiguity.

Following extensive hearing on the parties' respective motions, the trial court ruled that a *per capita* distribution was intended. This means that each descendant of Olive Custer, whether a grandchild or great-grandchild, receives an equal one eighteenth share of the trust. The court based its ruling on a reading of the entire will, the wording of the disputed provision and the testimony offered at hearing.

On appeal the parties argue that (1) the trial court erred in ordering a *per capita* distribution of the estate; and (2) the trial court erred in allowing the attorney's discovery deposition into evidence.

In construing either a trust or a will, the challenge is to find the settlor's or testator's intent and, provided that the intention is not against public policy, to give it effect. (See *Hull v. Adams* (1948), 399 Ill. 347, 352.) Courts search for intent by analyzing both the words used in the instrument and the circumstances under which they were drafted, including: "The state of the testator's property, his family, and the like." (*Armstrong v. Barber* (1909), 239 Ill. 389, 404.) When, however, the instrument fails to make the settlor's or testator's intention clear, courts often resort to rules of construction to determine the meaning of the terms used in the document. (*Hull v. Adams* (1948), 399 Ill. 347, 352.) Rules of construction, which are applied in the same manner to both wills and trusts, are court-created presumptions of what the ordinary settlor or testator would have intended the ambiguous terms to mean; they are merely the court's own assessments of what the person probably meant when the provision was drafted. (*Harris Trust & Savings Bank v. Jackson* (1952), 412 Ill. 261, 266-67.) Such rules should not be allowed to defeat what the ordinary settlor would have intended. When a rule of construction tends to subvert intentions, the rule is no longer legitimate and must be discarded. *Harris Trust & Savings Bank v. Beach* (1987), 118 Ill. 2d 1, 4, 513 N.E.2d 833.

In this case the trial court ruled that the intent of the testator was that all of her living descendants share equally in the distribution of her estate upon the death of the last life tenant. This is commonly known as a *per capita* distribution. The appellants claim a *per stirpes* distribution was intended. This means the descendants take based upon the rights of an ancestor, usually a parent. In support of their claim that a *per stirpes* distribution is required, the appellants cite *Wyeth v. Crane* (1931), 342 Ill. 545, and *Harris Trust & Savings Bank v. Beach* (1987), 118 Ill. 2d 1, 513 N.E.2d 833.

In *Wyeth v. Crane*, Samuel Wyeth was the owner of several hundred acres of farmland. Wyeth had four children, and in 1906, Wyeth deeded one-fourth of his property to each of his children. Wyeth did not deed a fee simple interest to his children. Instead, Wyeth retained a life estate in the subject property. However, by 1906 two of Wyeth's children, James and Thomas Wyeth, had died. Each had fathered children and Wyeth placed the children's interest in trust. The deed conveying the property to the offspring of James Wyeth became the subject of litigation. The deed at issue conveyed 280 acres of farmland to

"The descendants of James Wyeth, deceased." In contrast, the deed conveying farmland to the offspring of Wyeth's other son read "To the heirs of Thomas Wyeth, deceased."

By the time Samuel Wyeth died, the descendants of James Wyeth had married and also fathered children. The question then arose as to who owned the subject property and to what degree. Did the great-grandchildren of Samuel Wyeth, as his descendants, split the subject property equally with their parents? The Illinois Supreme Court determined that they did not. The court ruled that in case of a gift or conveyance to "descendants," without further explanation, children do not take concurrently with their parents.

> "We believe the correct rule to be, that where a grantor or testator makes a gift to 'descendants' or 'issue,' unexplained by anything in the context of the instrument, children do not take concurrently or *per capita* with their living parents but take *per stirpes*." *Wyeth v. Crane*, 342 Ill. at 549.

Similarly, in *Harris Trust* (1987), 118 Ill. 2d 1, 513 N.E.2d 833, the Illinois Supreme Court was called on to determine to whom and in what manner a certain trust should be distributed. The disputed trust provision stated that the trust was to be divided between the testator's "[h]eirs, share and share alike." The Illinois Supreme Court ruled that when a testator leaves his estate to his or her "heirs," there is a presumption in favor of a *per stirpes* distribution which the opposing party must rebut by a preponderance of the evidence. The court based its ruling on the fact that the word "heirs" has a specific legal meaning: "[t]he word 'heirs' refers to 'those persons appointed by the law to inherit an estate in case of intestacy.' [Citation.]" *Harris Trust*, 118 Ill. 2d at 10.

■ In Illinois, the law presumes a *per stirpes* distribution was intended when gifts are made to a class of beneficiaries who stand in unequal degrees of relationship to the testator, and this presumption will prevail unless the testator uses inconsistent words showing a clear contrary intent, or to do so would defeat the obvious general intention of the testator. (*Harris Trust*, 118 Ill. 2d at 21-22.) The testator is presumed to have known the law in force when the will was drafted (*In re Estate of Hughlett* (1983), 113 Ill. App. 3d 910, 913, 446 N.E.2d 887), and the testator's failure to employ the term "*per capita*," we feel, is highly probative of her intent.

■ By all accounts, the decedent was an intelligent woman of substantial wealth. Her will was a detailed document, drafted by legal counsel, that utilized some fairly complex methods of estate distribution. Given these facts, it seems unlikely that the decedent intended a

*per capita* distribution of her estate but merely neglected to include that term in her will. A review of the record fails to disclose any admissible evidence of a clear contrary intent to a presumed *per stirpital* distribution. For this reason, we hold that the trial court erred in ruling that the estate was to be distributed *per capita*. We find that the intent of the testator was that the estate was to be distributed on a *per stirpes* basis.

Having found in favor of a *per stirpital* distribution, we must next resolve the question of the point at which the determination is made of the *per stirpes* distribution. One group of claimants, the "Calais Group," contends that the language of the will mandates a *per stirpes* distribution with equal shares of the *per stirpes* distribution to be determined at the level of descendants of the nearest degree of relationship to the testator (*i.e.*, one equal share for the line of descendants from each of the testator's two children). This method would result in a distribution of the trust as follows:

<u>Ethyl Schmith's descendants</u>:

Lester Pritchard, 1/10;
William C. Pritchard, Jr., 1/10;
John T. Pritchard, 1/10;
Sarah P. Nielsen, 1/10;
Christopher N. Pritchard, 1/10;

<u>Howard Custer's descendants</u>:

Janis Calais, 1/6;
Laurie Edwards, 1/6;
Adrian H. Day, 1/6.

Another group of beneficiaries, the "Christopher Pritchard Group," argues that the distribution must be determined at the level of descendants of the nearest degree of relationship to the testator for which survivors exist on the distribution date (January 22, 1990). That distribution method results in a distribution of the trust as follows:

<u>Ethyl Schmith's descendants</u>:

Lester Pritchard, 1/8;
William C. Pritchard, Jr., 1/8;
John T. Pritchard, 1/8;
Sarah P. Nielsen, 1/8;
Christopher N. Pritchard, 1/8;

and:

Howard Custer's descendants:

Janis Calais, 1/8;
Laurie Edwards, 1/8;
Adrian H. Day, 1/8.

■ The Restatement (Second) of Property provides that the *per stirpital* shares are to be determined at the level of descendants nearest the testator, regardless of survivorship. It states:

"If a gift is made to a class described as the 'issue' or 'descendants' of a designated person, or by a similar multi generational class gift term, in the absence of additional language or circumstances that indicate otherwise,

*\*\*\**

3. the initial division into shares will be on the basis of the number of class members, whether alive or deceased, in the first generation below the designated person." (Restatement (Second) of Property, Donative Transfers, §28.2 (1988).)

In *Harris Trust & Savings Bank v. Beach* (1987), 118 Ill. 2d 1, 513 N.E.2d 833, the Illinois Supreme Court determined the equal shares by the number of "heirs" at the nearest degree of relationship to the settlor.

Likewise, section 2—1 of the Illinois Probate Act of 1975 (Ill. Rev. Stat. 1989, ch. 110½, par. 2—1) provides for strict *per stirpital* distribution in intestacy situations. See Haskell, Preface to Wills, Trust and Administration 13, citing Ill. Rev. Stat. 1989, ch. 110½, par. 2—1.

We, therefore, hold that upon the death of Sally Ann Day, the last of the three persons mentioned in article 5, section 6 of the will to die, the trust *res* is to be distributed to the heirs of Olive F. Custer *per stirpes* and that the shares are to be determined at the level of descendants nearest the testator, Olive F. Custer. The trust is ordered to be distributed as follows: Lester T. Pritchard, 1/10; William C. Pritchard, Jr., 1/10; John T. Pritchard, 1/10 ; Sarah P. Nielsen, 1/10; Christopher N. Pritchard, 1/10; Janis Calais, 1/6; Laurie Edwards, 1/6; and Adrian H. Day, 1/6.

The only remaining issue is whether the trial court erred in considering the deposition testimony of the attorney who drafted Olive Custer's will.

As noted above, the intent of the testator should be determined from the four corners of the document. If the intent of the testator cannot be ascertained from the document itself, then extrinsic evidence may be admitted to explain the testator's intent. Extrinsic evidence may

not be allowed to show what the testatrix meant to say, but may only be allowed to show what she did say. (*Hayes v. Illinois Industrial Home for the Blind* (1958), 12 Ill. 2d 625.) In *Hayes*, for example, the testator left part of her estate to "Illinois Industrial Home for the Blind (commonly called the Light House for the Blind), 1900 Marshall Boulevard, Chicago, Illinois." The only problem with this disposition was that the "Chicago Light House for the Blind" and the "Illinois Industrial Home for the Blind" are distinct organizations.

The executor brought a petition for construction of the will. At trial, the court allowed the testator's business advisor to testify that the testator told him she wished to leave one-third of her estate to the Light House for the Blind. The business advisor produced a copy of a letter he sent to the testator's attorney stating that Augusta Czerwenka (the testator) wished to devise part of her estate to the Light House for the Blind. The attorney who drafted the will testified that he had his secretary verify the accuracy of the name "Lighthouse for the Blind." The secretary informed the attorney, incorrectly, that the proper name for the Light House for the Blind was "The Illinois Industrial Home for the Blind, 1900 Marshall Boulevard, Chicago, Illinois." The defendant objected to the testimony and asserted that the will was not ambiguous and the parenthetical clause should be disregarded. The high court ruled that the trial court properly allowed the testimony; "The trial court properly admitted the parol evidence to show what Mrs. Czerwenka meant by what she *did say*." *Hayes*, 12 Ill. 2d at 630.

■■ In the case before this court, the parties are not in dispute over what the testator said. Instead, they are unable to agree on the meaning of the words the testator actually employed. If a testator were to devise "my south lot" to an heir, the admission of extrinsic evidence would be proper. Without extrinsic testimony to explain the boundaries and common understanding of the term "my south lot," the court could not give effect to the testator's will. In the case at bar, however, there is no allegation of an ambiguity of the type encountered in *Hayes*. For this reason, the trial court erred in allowing the drafting attorney's testimony.

The judgment of the circuit court of Knox County is hereby reversed and the trial court is hereby ordered to direct a distribution of the estate of Olive F. Custer in accordance with the views expressed herein.

Reversed and remanded.

McCUSKEY and STOUDER, JJ., concur.