MARY DIANE RAASCH, a/k/a Diane M. Raasch, *et al.*, Plaintiffs-Appellants, v. GLADYS S. MEIER, Indiv. and as Ex'r of the Estate of Arthur F. Meier, Deceased, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 86—1268

Opinion filed June 1, 1988.—Rehearing denied July 6, 1988.

Diver, Bollman, Grach & Quade, of Waukegan (Robert M. Bollman and Richard J. Larson, of counsel), for appellants.

Miller, Forest, Downing & Huszagh, Ltd., of Glenview (Robert J. Downing and Marc H. Heisler, of counsel), for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Mary Diane Raasch and Glen Raasch, appeal from an order of the trial court denying their motion for summary judgment. Mary Diane and Glen contend that the trial court erred in granting motions for judgment on the pleadings in favor of defendants, Gladys S. Meier, individually and as executor of the estate of Arthur F. Meier, deceased; Glenview State Bank, individually and as trustee under the last will and testament of Arthur F. Meier, deceased; Arthur J. Meier; Patricia A. Opethal; and Jyl Frances Levine and Robert Levine, her husband, beneficiaries under the trust created by the last will and testament and codicil thereto of Arthur F. Meier. We affirm.

Arthur F. Meier died testate on July 6, 1980. His last will and testament, along with the codicil thereto, was admitted to probate in the circuit court of Cook County on September 24, 1980. Arthur's wife,

Gladys S. Meier, was appointed executor of his estate. According to the will and codicil (will), Gladys was to receive a pecuniary amount equal to 50% of the adjusted gross estate. Article 4 of the will established a trust for the benefit of Gladys, and Glenview State Bank was named trustee. The trust was to consist of the residue of Arthur's estate. Pursuant to paragraph A of article 4, Gladys, as beneficiary of the trust, was entitled to receive the income from the trust in monthly installments during her lifetime. In addition, the trustee was allowed to disburse portions of the principal when deemed necessary or advisable for Gladys' medical care, comfortable maintenance and welfare. However, no principal was to be disbursed until after all sources of Gladys' income known to the trustee were considered.

The portion of the will at issue in the present case is article 4, paragraph B. This paragraph essentially provides for the distribution of Gladys' trust following her death. It also states that "[i]n the event that any of my children or their spouses are indebted to me at the time of my death, such indebtedness shall be set off in satisfaction of said child's share of the estate and said indebtedness thereby forgiven." This portion of the will was executed as a codicil in 1978. Thereafter, in June 1979, Arthur loaned his daughter, plaintiff Mary Diane Raasch, and her husband, plaintiff Glen Raasch, $92,500. Gladys was not a party to the loan. According to the terms of the loan, Mary Diane and Glen were required to make payments of $1,000 per month to Arthur. At the time of Arthur's death, Mary Diane and Glen owed $87,312.39 in principal and $287.10 in accrued interest on the loan. The outstanding balance of the loan became an asset of Arthur's estate.

Following Arthur's death, Gladys, as executor, continued to collect payments from plaintiffs pursuant to the terms of the loan for over two years. In July 1984, plaintiffs allegedly learned of the language of article 4, paragraph B, of the will. Plaintiffs then filed a supplemental proceeding in the probate court seeking a judicial construction of the meaning of the will.

In count I of their complaint, plaintiffs alleged that the executor and the trustee failed to properly interpret the language of article 4, paragraph B, of the will by requiring plaintiffs to continue paying on the loan after the death of Arthur. In count II, plaintiffs alleged that the meaning of article 4, paragraph B, is clear and unambiguous and that the loan should therefore be declared fully paid. Plaintiffs requested the issuance of a release deed, an accounting, the return of any sums wrongfully collected and attorney fees and costs. Defendants filed their responses to the complaint. Plaintiffs later filed a mo-

tion for summary judgment and defendants filed motions for judgment on the pleadings.

After hearing argument of counsel and considering the parties' briefs on this issue, the trial court entered an order denying plaintiffs' motion for summary judgment and granting defendants' motions for judgment on the pleadings. Thereafter, plaintiffs filed a motion for rehearing and a petition for attorney fees and costs. Upon further briefing by the parties and additional argument, the trial court denied plaintiffs' request for attorney fees and costs. The court then entered an order specifically finding that the "will and codicil are not ambiguous and do not require construction." This appeal followed.

We initially address plaintiffs' argument that the trial court erroneously construed article 4, paragraph B, of Arthur's will as requiring them to continue repayment of the loan from Arthur. Article 4, paragraph B, states in pertinent part:

> "Upon the death of my wife, the trust created herein shall be terminated and distributed to my children *** *per stirpes* and not per capita. In the event that any of my children or their spouses are indebted to me at the time of my death, such indebtedness shall be set off in satisfaction of said child's share of the estate and said indebtedness thereby forgiven."

At issue here is the last sentence of this paragraph: "In the event that any of my children or their spouses are indebted to me at the time of my death, such indebtedness shall be set off in satisfaction of said child's share of the estate and said indebtedness thereby forgiven." It is plaintiffs' position that based upon the plain and ordinary meaning of the language of this paragraph, the time for calculation of a child's indebtedness to Arthur was at his death, and any indebtedness due and owing at that time would be set off against the child's share of the estate when received. Therefore, according to plaintiffs, when Arthur died their debt was extinguished. We find no merit to plaintiffs' argument.

■■ In support of their position, defendants urge us to adopt the findings of the trial court. Plaintiffs, however, argue that we should make an independent determination based on the facts and reverse the decision of the trial court. In general, a court of review will not disturb the findings of a trial court unless its holding is against the manifest weight of the evidence. However, the construction and legal effect to be given a will raises a question of law. As such, if the material facts are not in dispute and the only issue is the legal effect to be given the will, the manifest weight of the evidence standard is not applicable. Additionally, if the evidence is entirely documentary in

nature, a court of review may make an independent decision of the facts. *In re Estate of Offerman* (1987), 153 Ill. App. 3d 299, 302, 505 N.E.2d 413, 415.

In the present case, our examination of the record reveals that the material facts in this case are not in dispute. Therefore, the manifest weight of the evidence standard is not applicable here. Accordingly, we shall make an independent analysis of the will at issue in this appeal.

■ In construing a will, the challenge is to ascertain the testator's intent and, provided that the intention is not against public policy, give it effect. A testator's intent may be ascertained by analyzing both the language used in the instrument and the circumstances under which the instrument was drafted, including " 'the state of the testator's property, his family, and the like.' " (*Harris Trust & Savings Bank v. Beach* (1987), 118 Ill. 2d 1, 3-4, 513 N.E.2d 833, 834, quoting *Armstrong v. Barber* (1909), 239 Ill. 389, 404.) In examining the language used in the instrument, the instrument must be considered as a whole, and the provisions of a will should not be read in isolation. If the instrument's language clearly indicates the testator's intent, the court should not resort to rules of construction. *In re Estate of Offerman,* 153 Ill. App. 3d at 303, 505 N.E.2d at 416.

■ Our review of Arthur's will reveals that when it is read in its entirety, Arthur's intent is clear and unambiguous. Articles 2 and 3 are concerned solely with the care and comfort of Gladys. Article 4, paragraph A, establishes a trust for Gladys. The trust is in the form of a life estate but subject to invasion of the principal by the trustee for the care and comfort of Gladys. Paragraph B provides the mechanism under which the remainder of the trust, if any, is to be distributed after Gladys' death. It is in this context that Arthur refers to forgiveness of any debts owed to him by a remainderman or her spouse. Plaintiff, Mary Diane Raasch, is named as a direct beneficiary of Arthur's will only in the event that Gladys predeceased Arthur or did not survive at least 30 days beyond his death. In all other circumstances, Mary Diane is merely a remainderman with an interest in the corpus of the trust, if any, upon Gladys' death. Plaintiff Glen Raasch is not named as either a direct beneficiary or a remainderman.

Here, when Arthur's will is considered as a whole, it is apparent that the document revolves totally around Gladys' life and death. The trust was intended to last throughout Gladys' life and, depending on when she dies, the corpus of the trust remaining, if any, is to be distributed to Arthur's named children *per stirpes*. It is evident that forgiveness of any debt was not an independent object of Arthur's testa-

mentary plan. Clearly, the forgiveness-of-debt language must be examined in the context of both article 4, paragraph B, and the remaining portions of Arthur's will.

Plaintiffs, however, isolate one sentence out of Arthur's will to support their position that they are not required to repay the loan from Arthur because the setoff was to occur at Arthur's death. Yet, under plaintiffs' analysis, such a setoff would take place prior to Mary Diane's share of the trust, if any, ever becoming a present estate. Moreover, plaintiffs' argument ignores the remaining portions of Arthur's will and renders his testamentary scheme of providing for Gladys infirm. If plaintiffs' debt to the estate were extinguished at the moment of Arthur's death, Gladys' estate would be reduced by approximately $100,000.

Additionally, if we adopt plaintiffs' construction of the language at issue here, plaintiffs would stand to benefit significantly more than Mary Diane's siblings in the event that Gladys' trust is devoid of value at her death. This occurrence would be in direct contravention of Arthur's testamentary requirement that his children receive equal shares of his remaining estate. As a result, when the language "in the event that any of my children or their spouses are indebted to me at my death, such indebtedness shall be set off in satisfaction of said child's share of the estate and said indebtedness thereby forgiven," is viewed within the four corners of the will, plaintiffs' construction of the meaning of these words is unsupportable.

Accordingly, based on our determination that the language of Arthur's will is clear and unambiguous, we find no error in the trial court's decision that plaintiffs are required to continue repayment of their loan from Arthur to his estate.

Plaintiffs next assign as error the trial court's denial of their request for attorney fees and costs. Plaintiffs essentially argue that the trial court erred when it determined that Arthur's will was not ambiguous, and therefore, plaintiffs were not entitled to attorney fees and costs. We find no error in the trial court's decision.

In a case involving the construction of a will, the cost of litigation is borne by the estate on the theory that the testator's intent was expressed so ambiguously that a construction of the instrument was necessary to resolve adverse claims. Attorney fees and costs may be allowed to a party even if the construction adopted by the court is adverse to the party's claim. However, attorney fees and costs are not allowed where the construction of the will was unnecessary. Moreover, the mere allegation of an ambiguity in the will does not entitle a plaintiff to such fees. *In re Estate of Carlson* (1976), 39 Ill. App. 3d

281, 285-86, 350 N.E.2d 306, 310.

■ At the hearing on plaintiffs' request for attorney fees and costs, the trial court specifically stated:

> "[Y]ou cannot zero in on six words in this document in order to create the ambiguity you want to create ***. If you look at the entire document, and I stand on this and that's my ruling, I do not believe that there is an ambiguity here."

We have previously determined that the trial court correctly found that the challenged language of the will was not ambiguous as a matter of law. As a result, plaintiff's argument that they were entitled to attorney fees and costs must therefore fail.

Accordingly, the judgment of the trial court is affirmed in all respects.

Affirmed.

McNAMARA and FREEMAN, JJ., concur.