NO. 4-07-0065     Filed 3/3/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

DOLORES M. RANGER, Trustee of the    )   Appeal from
WILLIAM E. RANGER AND DOLORES M. RANGER )   Circuit Court of
REVOCABLE LIVING TRUST AGREEMENT,    )   Macoupin County
          Plaintiff-Appellant,       )   No. 06CH56
          v.                         )
DOLORES M. RANGER, Current Beneficiary )
of the WILLIAM E. RANGER AND DOLORES M. )
RANGER REVOCABLE LIVING TRUST AGREEMENT;)
and BRENDA S. ALBRECHT, MARK R. RANGER, )
and JULIE A. RANGER, Contingent      )
Remainder Beneficiaries of the       )
WILLIAM E. RANGER AND DOLORES M. RANGER )
REVOCABLE LIVING TRUST AGREEMENT,    )
          Defendants-Appellants,     )
          and                        )
MICHAEL W. RANGER and DIANA L.       )   Honorable
WILLIAMSON, n/k/a DIANA L. HELVEY,   )   Patrick J. Londrigan,
          Defendants-Appellees.      )   Judge Presiding.
_____

          JUSTICE COOK delivered the opinion of the court:

          Plaintiff, Dolores M. Ranger as trustee, filed a

complaint for construction on April 4, 2006, requesting the trial

court construe various parts of the William E. Ranger and Dolores

M. Ranger Revocable Living Trust Agreement (Trust).  Defendants

are Dolores, as the current beneficiary of the Trust, and her

five children, Brenda Albrecht, Michael Ranger, Diana Williamson,

Mark Ranger, and Julie Ranger as contingent remainder beneficia-

ries.  Defendant Michael Ranger opposed the trustee's proposed

administration of certain Trust provisions, namely William's

special directives, which dealt specifically with the family

business, William Ranger and Sons Excavating (business).  On

October 4, 2006, Michael filed a motion for summary judgment

alleging the Trust clearly stated that the business goes to him upon the death of William Ranger and requesting that judgment be entered in his favor. The trial court granted Michael's motion. Defendants Dolores, Brenda, Mark, and Julie (appellants) appeal. We reverse and remand.

## I. BACKGROUND

The Trust was entered into on December 21, 1994, by William and Dolores for federal-estate-tax marital-deduction purposes. Both were named as trustors and cotrustees. Upon the death of William, Dolores became the sole "Surviving Trustor" (as defined by section 4.01 of the Trust), trustee, and surviving spouse. In her role as trustee, Dolores proposed an administration of the Trust. Michael disputed the trustee's proposed administration, so the trustee filed a complaint for declaratory relief.

The dispute centered on whether the business in its entirety was to be immediately transferred to Michael or whether William's share in the business became part of trust "B" entitling the surviving trustor to the net income of William's share of the business during her lifetime. We note that while not part of the record, all parties agree that Michael holds 49% ownership of the business and William's pour-over will made William's 51% ownership of the business part of the "Trust Estate" (as defined by section 1.01 of the Trust).

In her complaint, the trustee argued that it was the trustors' intention to benefit the Surviving Trustor during her

lifetime with all of the assets held in the Trust. Trustee proposed the Trust should be interpreted as William intended to give Michael control over the business and not sole ownership. Under the trustee's proposal, Michael "may effectually manage and operate the Company until his death as a life estate or the prior sale of said Company and that the Company stay in [t]rust until said Company is sold or Michael W. Ranger is deceased." Michael disagreed with this position, as did his sister Diana.

Under article 1, see appendix, the Trust states that it was "formed to hold title to real and personal property for the benefit of the Trustors of this trust and to provide for the orderly use and transfer of these assets upon the death of the Trustors." The "Trust Estate" is defined as "all property, transferred or conveyed to and received by the [t]rustee, held pursuant to the terms of this instrument."

Under article 3, the Trust states that upon the death of one of the trustors, the surviving trustor shall do the following:

> "collect all insurance proceeds payable to
> the [t]rustee by reason of such death, and
> all bequests and devises distributable to
> the Trust Estate, and shall divide the en-
> tire Trust Estate into three separate trusts
> to be known and herein designated as sur-
> vivor's trust 'A', decedent's trust 'B' and
> excess property trust 'C'."

Under the same article, the Trust states that trust A consists of the separate property of the surviving trustor, trust B consists of the separate property of the decedent trustor, and trust C consists of that portion, if any, of the Trust Estate that exceeds the total of the amounts allocated to Trusts A and B. The Trust is to be administered in such a way as to minimize all applicable taxes.

According to subsections 3.09, 3.10, and 3.11, upon the death of one of the trustors, the net income of trust A, B, and C, shall be paid to the surviving spouse.

Article 4 of the Trust begins with section 4.01 entitled "Second Death." Section 4.01 states the following:

"On the death of the last [t]rustor to die (the 'Surviving Trustor') the [t]rustee shall distribute the principal of the 'A' [t]rust and of the 'C' [t]rust and any accrued or un- distributed income from the principal of the 'B' [t]rust in such a manner and to such persons, *** as directed in this [t]rust [a]greement."

Section 4.02, entitled "Payment of the Second Death Expenses," also begins, "On the death of the surviving Trustor," and then directs the trustee to pay expenses from trust A. Finally, section 4.03, entitled "Trust Income and Principal Distribution," without specifically referring to the death of the surviving trustor, directs the successor trustee to:

"apply and distribute the net income and

- 4 -

principal of each of the shares of the re-
sulting Trust Estate (consisting of the 'A'
[t]rust, the 'B' [t]rust, and the 'C' [t]rust)
after giving effect to the section of this
[t]rust [a]greement entitled 'Special Directives'
to the following [b]eneficiaries in the frac-
tional or percentage shares as indicated."

Under section 4.03, William's and Dolores's beneficiaries are
their five children and each is to receive 20% of the Trust
Estate.

Section 9.02 directs the trustees to do the following:
"allocate, hold, administer[,] and distribute
the Trust assets as hereinafter provided:

a) Upon the death of the first [t]rustor,
the [t]rustee shall make any separate distribu-
tions that have been specified by the deceased
[t]rustor.  The [t]rustee shall also take into
consideration the appropriate provisions of
this [a]rticle.

b) Upon the death of the surviving
spouse, the [t]rustee shall hold, adminis-
ter[,] and distribute the Trust assets in the
manner prescribed."

Section 9.03, entitled "Personal Property Distribution," states,
"Notwithstanding any provision of this [t]rust [a]greement to the
contrary, the [t]rustee must abide by any memorandum by the

[t]rustors--particularly that contained in the section entitled 'Special Directives' incorporated into this [t]rust instrument."

William Ranger's special directives contained six provisions. The first provision lists the recipients of his affection as first, his spouse, Dolores, and second, his five children. The fourth provision states, "Upon my death, my business known as William Ranger and Sons Excavating, including all real and personal property owned by said business, is to go entirely to my son Michael W. Ranger." The fifth provision states that if Michael decides not to take the business, the business shall be sold and the proceeds divided equally among William's children. Finally, the sixth provision states that should Michael decide to sell the business, all proceeds of the sale shall be divided equally among William's children.

After certain limited discovery, Michael filed a motion for summary judgment, contending that William's special directive required that the business be immediately transferred to him. According to Michael, section 4.03 provides that the special directive is to be implemented upon William's death, even if Dolores is the surviving spouse, and the fourth directive requires the business go to him outright.

The trial court granted Michael's motion, finding that although sections 4.01 and 4.02 contain language requiring the death of the surviving trustor before being effective, section 4.03 did not have similar language. Since section 4.03 requires implementation of the special directives and provision four of

the special directives provides that the entire business should go to Michael upon William's death, the trial court granted Michael's motion for summary judgment

Appellants filed a motion to reconsider the trial court's ruling.  The court denied the motion after a hearing.  This appeal followed.

## II. ANALYSIS

Appellants argue that the trial court erred in granting Michael's motion for summary judgment for two reasons.  First, the court unreasonably inferred from the Trust that section 4.03, unlike the rest of article 4, did not depend upon the death of the surviving spouse to take effect, thus immediately transferring the business to Michael.  Second, contrary to Illinois law, the court did not view section 4.03 in light of the other sections of article 4 or in light of the entire Trust, causing the court to erroneously give effect to the special directives before the surviving trustor died.  Michael argues the court neither misapplied Illinois law nor drew unreasonable inferences from the Trust.  Finally, plaintiff, the trustee, argues that the court erred in granting Michael's motion because the court did not implement the clear intent of the trustors as expressed in the Trust and failed to correctly apply Illinois law.

Summary judgment is only appropriate when "'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a [sum-

mary] judgment as a matter of law.'  [Citation.]"  <u>Gilbert v.</u>
<u>Sycamore Municipal Hospital</u>, 156 Ill. 2d 511, 517-18, 622 N.E.2d
788, 792 (1993); see also 735 ILCS 5/2-1005(c) (West 2006).
Summary judgment is to be encouraged as an expeditious method of
disposing of a lawsuit, but it is a drastic measure that should
only be allowed when the right of the moving party to judgment is
free and clear from doubt.  <u>Olson v. Etheridge</u>, 177 Ill. 2d 396,
404, 686 N.E.2d 563, 566 (1997).  We review <u>de</u> <u>novo</u> a grant of
summary judgment.  <u>Busch v. Graphic Color Corp.</u>, 169 Ill. 2d 325,
333, 662 N.E.2d 397, 402 (1996).

Whether the trial court erred in granting Michael's
motion turns on interpretation of section 4.03 of the Trust.  We
hold that the court erred in its interpretation.

Section 4.03 clearly does not apply until the death of
the last trustor.  Under the trial court's interpretation,
reading section 4.03 alone, the trustee must immediately apply
and distribute the net income and principal of each of the shares
of the resulting Trust Estate, which includes the survivor's
trust A, the decedent's trust B, and the excess property trust C,
after giving effect to the "Special Directives" section.  The
fourth section in "Special Directives" gives Michael the business
upon William's death.  The court ruled that section 4.03 requires
plaintiff trustee to immediately give effect to the special
directives at William's death.

We first note that reading section 4.03 to take effect
immediately upon William's death would not only require the

trustee to give effect to William's special directives but would also require that the trustee distribute the net income and principal of each trust, including trust A, the trust consisting of the separate property of the surviving spouse. Dolores, as trustee, would then have to give away everything while she was still living, leaving her with no means of support. This is clearly contrary to the trustors' intent and the purpose of the Trust. The article which should be applied, article 3, "Provisions After the First Death," does not contain a similar provision to article 4 directing distribution after giving effect to the special directives.

The parties assert that the Trust is unambiguous. Appellants and the trustee argue that each provision must be considered in light of the Trust as a whole, while Michael argues that the plain language of section 4.03 directs the trustee to immediately give effect to the special directive that he gets the business upon William's death.

The central purpose in construing a trust is determining the trustors' intent from the trust as a whole and effectuating that intent if not contrary to public policy. Harris Trust & Savings Bank v. Donovan, 145 Ill. 2d 166, 172, 582 N.E.2d 120, 123 (1991). "[C]ourts must apply the same rules of construction" when construing trusts "as apply to wills and other contracts." Stein v. Scott, 252 Ill. App. 3d 611, 614, 625 N.E.2d 713, 716 (1993). When determining the meaning of a provision in a will, the court looks to the true intention of the testator by compar-

ing the different provisions and parts and reading them in light of each other to deduce from each of the separate parts a harmonious whole. Morrison v. Tyler, 266 Ill. 308, 318-19, 107 N.E. 602, 605 (1914). When the court determines the intent of parties entering into contracts, the intent "should not be gathered from any clause or provisions standing by itself, but each provision should be viewed in the light of all the other parts." Bankier v. First Federal Savings & Loan Ass'n of Champaign, 225 Ill. App. 3d 864, 869, 588 N.E.2d 391, 394 (1992).

In this case, the trustors' intent is apparent from a reading of the Trust as a whole. Section 1.01 provides that the purpose of the Trust is "to hold title to real and personal property for the benefit of the [t]rustors of this [t]rust." The Trustors clearly intended that they receive the benefit of the Trust Estate while they were alive, as section 2.01 provides for payment, at least annually, of the net income from the Trust Estate to or for the benefit of husband and wife. Finally, a notarized summary of the Trust signed by both trustors explicitly provides for the surviving spouse to receive life income from trusts A, B, and C, indicating the trustors intended the Trust to benefit the surviving spouse until death.

Upon the death of one of the trustors, article 3 requires that all insurance proceeds payable to the surviving spouse, all bequests, and all devises distributable to the Trust Estate be divided into three trusts: trusts A (surviving spouse's property), B (decedent's property), and C (excess

property). Article 3 further requires that the surviving trustor shall receive all the net income from each of trust A, B, and C. Article 3 establishes that the trustors intended that when one of them died, the survivor was to continue to receive the income from the Trust Estate.

Sections 4.01 and 4.02 expressly state how to administer the Trust upon the death of the surviving trustor. Section 4.01 requires that upon the death of the surviving trustor, the trustee must distribute anything left in trusts A, B, and C "as directed in this [t]rust [a]greement." Section 4.03 then directs the trustee how to apply and distribute the net income and principal of each of the shares of the "resulting Trust Estate." Clearly, section 4.03 is meant to apply when the surviving trustor dies, as the sections in article 3 already direct the trustee how to distribute the Trust when the first trustor dies. Further, neither William nor Dolores is named as a beneficiary in section 4.03. Naming only the children demonstrates that William and Dolores intended that they both be deceased when this section becomes operative. Any other interpretation results in a finding that they intended the surviving spouse be left without support. The omission from section 4.03 of the phrase "[o]n the death of the surviving [t]rustor," contained in the other sections of article 4, is not enough to establish that the trustors intended the distribution occur upon the death of only one of the trustors as this would be contrary to the stated purpose of the Trust, the distribution provided in article 3, and the rest of article 4,

- 11 -

which deals with the deaths of both trustors.

It could be argued that the special directives were meant to control in any event and supersede all other provisions of the Trust. The general provisions listed in article 9, section 9.02, direct that upon the death of the first trustor, the trustee shall make any separate distributions that have been specified by the deceased trustor. Article 9, section 9.03, directs that "[n]otwithstanding any provision of this [t]rust [a]greement to the contrary, the [t]rustee must abide by any memorandum by the [t]rustors--particularly that contained in the section entitled 'Special Directives' incorporated into this [t]rust instrument." Section 9.03 is entitled "Personal Property Distribution," and lists such items as furniture, pictures, and jewelry. Section 9.03 appears to be concerned with sentimental items and not major assets such as the business.

The business, however, is the primary focus of the special directives signed by the trustors. No items of furniture, pictures, or jewelry are listed in the special directives. The remaining provisions of the special directives identify the "recipients of my affection," direct that taxes be paid out of residue, and what happens if beneficiaries predecease. Similar provisions already appear in the Trust. Both William and Dolores signed a special directives provision, but only William's provision mentioned the business. William's fourth special directive stated that "[u]pon my death" the business "is to go entirely to my son Michael." It is interesting, however, that the gift of

the "entire" business to Michael in the special directives, whenever it takes effect, is not unrestricted. If Michael "decides not to take the business," the proceeds are to be divided equally among the children. Should Michael "decide to sell the business" the proceeds are again to be divided equally among the children. Would Michael ever have the right to sell the business and retain the proceeds himself? Whatever the result might be after the death of both trustors, it does not appear that he would have that right while one of the trustors was living. We conclude that section 9.03's provision for distribution of personal property does not apply to the business and that the business is to be distributed under section 4.03.

As section 4.03 does not take effect until the death of the surviving trustor, the special directives likewise do not take effect until the death of the surviving trustor. Summary judgment for Michael was therefore inappropriate as the fourth directive would not take effect until Dolores's death.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for proceedings to construe the Trust consistently with this order.

Reversed and remanded.

MYERSCOUGH and KNECHT, JJ., concur.

- 13 -

**THE WILLIAM RANGER and DOLORES M. RANGER**

**REVOCABLE LIVING TRUST AGREEMENT**

Dated: December 21, 1994

\* \* \*

**ARTICLE ONE**

**Section 1.01 <u>Trust Estate Defined</u>**

This Revocable Trust is formed to hold title to real and personal property for the benefit of the Trustors of this trust and to provide for the orderly use and transfer of these assets upon the death of the Trustors. The "Trust Estate" is defined as all property, transferred or conveyed to and received by the Trustee, held pursuant to the terms of his instrument. The Trustee is required to hold, administer, and distribute this property as provided in this Trust Agreement.

\* \* \*

**ARTICLE THREE**

**Section 3.01 <u>Provisions After the First Death</u>**

On the death of either Trustor leaving the other Trustor surviving him or her, the Trustee shall collect all insurance proceeds payable to the Trustee by reason of such death, and all bequests and devises distributable to the Trust Estate, and shall divide the entire Trust Estate into three separate trusts to be known and herein designated as survivor's trust "A", decedent's trust "B" and excess property trust "C".

**ARTICLE FOUR**

**Section 4.01 <u>Second Death</u>**

On the death of the last Trustor to die (the "Surviving Trustor"), the Trustee shall distribute the principal of the "A" Trust and of the "C" Trust and any accrued or undistributed income from the principal of the "B" Trust in such a manner and to such persons, including the estate or the creditors, as directed in this Trust Agreement.

**Section 4.02 <u>Payment of the Second Death Expenses</u>**

On the death of the surviving Trustor, the Trustee shall pay from Trust "A" the expenses of the surviving Trustor's last illness, funeral, burial and any inheritance, estate or death taxes that may be due by reason of the surviving Trustor's death, unless the Trustee in his or her absolute discretion determines that other adequate provisions have been made for the payment of such expenses and taxes.

**Section 4.03 <u>Trust Income and Principal Distribution</u>**

a) The Trustee shall apply and distribute the net income and principal of each of the shares of the resulting Trust Estate (consisting of the "A" Trust, the "B" Trust, and the "C" Trust) after giving effect to the section of this Trust Agreement entitled "Special Directives" to the following Beneficiaries in the fractional or percentage shares as indicated:

**WILLIAM E. RANGER's** beneficiaries:

**BRENDA S. ALBRECHT        20%**

|                        |       |
|------------------------|-------|
| **MICHAEL W. RANGER**  | 20%   |
| **DIANA L. WILLIAMSON**| 20%   |
| **MARK R. RANGER**     | 20%   |
| **JULIE A. RANGER**    | 20%   |

DOLORES M. RANGER's beneficiaries:

|                        |       |
|------------------------|-------|
| **BRENDA S. ALBRECHT** | 20%   |
| **MICHAEL W. RANGER**  | 20%   |
| **DIANA L. WILLIAMSON**| 20%   |
| **MARK R. RANGER**     | 20%   |
| **JULIE A. RANGER**    | 20%   |

\* \* \*

## ARTICLE NINE

### Section 9.01 Trustees

All Trustees are to serve without bond. The following will act as Trustees of any Trusts created by this Trust Agreement, including the "A" Trust, the "B" Trust and the "C" Trust, in the following order of succession:

First: The undersigned, **WILLIAM E. RANGER and/or DOLORES M. RANGER**

Second: The surviving spouse.

Third: At the death of the surviving spouse, **BRENDA S. ALBRECHT** and **DIANA L. WILLIAMSON** designated as First Successor Trustees to serve jointly.

Fourth: A Trustee chosen by those Beneficiaries entitled to receive the majority of the income of the Trust, with a parent or legal guardian voting for minor Beneficiaries;

- 16 -

provided, however, that the children of any deceased Beneficiary shall collectively have only one vote.

## Section 9.02 **Allocation and Distribution of the Trust Assets**

The Trustee shall allocate, hold, administer and distribute the Trust assets as hereinafter provided:

a) Upon the death of the first Trustor, the Trustee shall make any separate distributions that have been specified by the deceased Trustor. The Trustee shall also take into consideration the appropriate provisions of this Article.

b) Upon the death of the surviving spouse, the Trustee shall hold, administer and distribute the Trust assets in the manner prescribed.

## Section 9.03 **Personal Property Distribution**

Notwithstanding any provision of this Trust Agreement to the contrary, the Trustee must abide by any memorandum by the Trustor -- particularly that contained in the section entitled "Special Directives" incorporated into this Trust instrument -- directing the disposition of Trust assets of every kind including but not limited to furniture, appliances, furnishings, pictures, china, silverware, glass, books, jewelry, wearing apparel, and all policies of fire, burglary, property damage, and other insurance on or in connection with the use of this property. Otherwise, any personal and household effects of the trustors shall be distributed with the remaining assets of the Trust Estate.

\* \* \*

## SPECIAL DIRECTIVES

## WILLIAM E. RANGER

I, **WILLIAM E. RANGER**, a resident of the County of **MACOUPIN**, State of **ILLINOIS**, being of lawful age, and of sound and disposing mind and memory, and not acting under duress, fraud, or undue influence, hereby make, publish an declare this to be my Special Directive, and I incorporate this into **THE WILLIAM E RANGER and DOLORES M. RANGER REVOCABLE LIVING TRUST AGREEMENT.**

### FIRST

The recipients of my affection are:

    1) My spouse - **DOLORES M. RANGER**

    2) My children - **BRENDA S. ALBRECHT**

                  **MICHAEL W. RANGER**

                  **DIANA L. WILLIAMSON**

                  **MARK R. RANGER**

                  **JULIE A. RANGER**

### SECOND

I direct that all estate and inheritance taxes payable as a result of my death, not limited to taxes assessed on property, shall be paid out of the residue of my Estate, and shall not be deducted or collected from any Legatee, Devise or Beneficiary hereunder.

### THIRD

In the event any of my named Beneficiaries should predecease me, all of that person's share of the Trust Estate is

to be left to be equally divided among that person's lineal children.  If any of the named beneficiaries does not have any children, all of that person's share of the Trust Estate is to be equally divided among that person's lineal descendants per stirpes and by right of representation.

### FOURTH

Upon my death, my business known as **WILLIAM RANGER AND SONS EXCAVATING**, including all real and personal property owned by said business, is to go entirely to my son **MICHAEL W. RANGER.**

### FIFTH

Should my son **MICHAEL W. RANGER** decide not to take the business, the business shall be sold and the proceeds divided equally among my daughters, **BRENDA S. ALBRECHT, DIANA L. WILLIAM-SON, AND JULIE A. RANGER; and my sons MICHAEL W. RANGER AND MARK R. RANGER.**

### SIXTH

Should my son **MICHAEL W. RANGER** decide to sell the business, all proceeds of the sale shall be divided equally among my daughters, **BRENDA S. ALBRECHT, DIANA L. WILLIAMSON, AND JULIE A. RANGER; and my sons MICHAEL W. RANGER AND MARK R. RANGER.**