FIRST DIVISION

Nos. 1-08-2647, 1-08-3281 & 1-08-3282 (cons.)

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., as Trustee Under the Will of Hartley Harper, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant and Cross-Appellee, | ) ) | |
| v. | ) ) | No. 07 CH 6683 |
| JOHN CARPENTER, *et al.*, | ) ) | Honorable William O. Maki, |
| Defendants-Appellees and Cross-Appellants. | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the opinion of the court:

This appeal arises from a dispute involving the plaintiff trustee Bank of America, N.A., the defendant income beneficiaries, and the defendant remainder beneficiaries concerning the termination date of a trust established by the will of the deceased, Hartley Harper. On cross-motions for summary judgment, the trial court granted summary judgment in favor of the remainder beneficiaries, ruling that the will should be read to require termination of the trust in 2013. The trial court also granted summary judgment in favor of the trustee on the remainder beneficiaries' breach of fiduciary duty counterclaim.

On appeal, the trustee and income beneficiaries argue the trial court erred in construing the provision that triggers the termination of the trust to refer to only *income* beneficiaries as opposed to *both income and remainder* beneficiaries. In their cross-appeal, the remainder

beneficiaries challenge the trial court's dismissal of their counterclaim, which alleged the trustee breached its fiduciary duty by failing to seek a declaration of the trust's termination date.

For the reasons that follow, we reverse the judgment of the trial court concerning its interpretation of the termination date of the trust and affirm the judgment of the trial court dismissing the breach of fiduciary duty counterclaim.

## I.  BACKGROUND

Hartley Harper died in December 1932.  His 14-page typed will, which he had executed in April 1932, left the residue of his estate to a trust created for the benefit of a certain group of individuals, the income beneficiaries, to receive income until the trust's termination and thereafter for another group, the remainder beneficiaries, to receive the corpus of the trust upon its termination.  Questions, however, arose among the parties about the correct termination date of the trust given the effect of a provision that arguably violated the common law rule against perpetuities.  The common law perpetuities rule provides "that an interest sought to be devised to be good must vest, if at all, not later than twenty-one years and nine months after some life or lives in being at the creation of the interest." Johnston v. Cosby, 374 Ill. 407, 410 (1940).  See also First National Bank of Joliet v. Hampson, 88 Ill. App. 3d 1057, 1061 (1980), quoting Moynihan, Real Property  204 (1962) (" 'a future interest which, by any possibility, may not vest within twenty-one years after a life or lives in being at the time of its creation is void at its inception' ").

Relevant to this appeal, subparagraphs (1) and (2) of article three of the will provided that the trustee pay annual annuities to Hartley Harper's two sisters and his brother, Frederick C.

Harper, and then the balance of the net income arising from the trust to his wife, Alice D. Harper, for life. Subparagraph (3) provided that, upon the death of the wife Alice, the trustee would pay Hartley Harper's stepdaughter Mary Foster a specific bequest and then pay the entire income of the trust to his brother Frederick for life. When brother Frederick died, the trustee would split the trust income equally between Frederick's two children and then to their descendants *per stirpes*. Frederick's two children were Hartley Harper's nephew, Frederick H. Harper, and niece, Alice L. Harper.

The trust would terminate according to the following provisions (for clarity, we have italicized the terms that are specifically contested by the parties in this appeal):

"(4) Upon the death of the last survivor of my said wife, my said brother, my said niece, my said nephew, *all descendants of my said nephew, and all descendants of my said niece*, I direct that all of the estate then remaining in the hands of the Trustee *** shall be then distributed by my Trustee as follows: [in equal thirds to the group comprised of Hartley Harper's stepdaughter Mary Foster, stepgrandson Henry Foster, and sister-in-law Flora Casterline. If, upon termination of the trust, either of those three beneficiaries was deceased but had any descendants, then the deceased ancestor's share would pass *per stirpes* to such descendants. If none of stepdaughter Mary, stepgrandson Henry, sister-in-law Flora and their descendants were living, then the trust principal would be distributed to the heirs-at-law of the last survivor of stepdaughter Mary, stepgrandson Henry, and sister-in-law Flora.]

(5) No trust hereby created shall in any event continue for a period longer than twenty-one (21) years after the death of the last survivor *of all the beneficiaries herein named or described* who are living at the date of my death, at the end of which said twenty-one year period this trust shall terminate and distribution shall be made in the manner in the paragraph last hereinabove provided (being subparagraph 4 of Article THIRD) without regard to, and notwithstanding, any provisions hereof which otherwise might postpone distribution beyond such time."  (Emphasis added.)

The parties' dispute centers on the subparagraph (4) phrase "all descendants of my said nephew, and all descendants of my said niece," which arguably presents a perpetuities problem. Ultimately, the trustee took the position that the trust would terminate 21 years after the death of Elizabeth Sperry Rodman (born in 1918), William Casterline (born in 1924), and Burnham Casterline (born in 1929), who are the last three beneficiaries named or described in the entire will who were living at the time of Hartley Harper's death in 1932.  The trustee's position was based on its determination that the will was unambiguous and must be applied as written. Accordingly, when the termination provision in subparagraph (4) was read together with the savings clause in subparagraph (5), the will on its face cured any perpetuities problem by requiring termination at the earlier of either (1) the death of all the descendants of Hartley Harper's nephew and niece, or (2) 21 years after the death of the last of all the beneficiaries named or described in the entire will who were living at the time of Hartley Harper's death.

The remainder beneficiaries, however, argued that the language of subparagraphs (4) and (5) was susceptible to four different reasonable interpretations concerning the trust's termination date. Those four interpretations are designated and summarized as follows:

Interpretation 4: Because the phrase "all descendants of my said nephew, and all descendants of my said niece" violates the rule against perpetuities, it is either stricken from subparagraph (4) or cured by adding the phrase "who are living at the date of my death." Under this interpretation, the trust terminated when niece Alice died in January 1992, because she was the last survivor of the named group and neither she nor nephew Frederick had any children before Hartley Harper died in 1932.

The remaining interpretations acknowledged the possible rule against perpetuities violation and looked to the savings clause in subparagraph (5). The remainder beneficiaries contended the following three interpretations were possible depending on how the phrase "of all the beneficiaries herein named or described" was construed.

Interpretation 1: This reads subparagraphs (4) and (5) together without adding or subtracting any words. The subparagraph (5) phrase refers to both the *income and remainder* beneficiaries *named or described* in the will who were living at the date of Hartley Harper's death. This group includes nephew Frederick, niece Alice, stepdaughter Mary, stepgrandson Henry, sister-in-law Flora Casterline, and three of Flora's currently living grandchildren (Elizabeth Sperry Rodman, William Casterline and Burnham Casterline). Under this

interpretation, the trust would terminate at the earlier of: (1) the deaths of all the descendants of nephew Frederick and niece Alice, or (2) 21 years after the deaths of the three presently living measuring lives and remainder beneficiaries (Elizabeth Sperry Rodman, William Casterline and Burnham Casterline). Under this interpretation, a precise termination date cannot yet be ascertained.

Interpretation 2: This strikes the words "or described" from subparagraph (5) so that the phrase refers to both the *income and remainder* beneficiaries *specifically named* in the will who were living at the date of Hartley Harper's death. This group includes nephew Frederick, niece Alice, stepdaughter Mary, stepgrandson Henry, and sister-in-law Flora Casterline. Under this interpretation, the trust would terminate in May 2028, which is 21 years from the death in 2007 of stepgrandson Henry, the last survivor of this group of individuals.

Interpretation 3: This adds the word *income* to subparagraph (5) so that the phrase refers to *income* beneficiaries *named or described* who were living at the date of Hartley Harper's death. This group is limited to nephew Frederick and niece Alice. Under this interpretation, the trust would terminate in January 2013, which is 21 years from the death in 1992 of niece Alice.

In 2007, the trustee filed a complaint for declaratory judgment, seeking, *inter alia*, an order to convert the trust to a total return trust pursuant to section 5.3 of the Illinois Trust and Trustees Act (760 ILCS 5/5.3 (West 2006)). The trustee intended to eliminate or reduce tensions between income and remainder beneficiaries by converting to a percentage payment each year.

A group of 53 remainder beneficiaries filed a counterclaim, seeking a declaratory judgment that the trust termination provision was ambiguous and should be construed to have required termination back in January 1992 in accordance with interpretation 4. They also alleged the trustee had employed three different interpretations of the termination provision over the past 75 years and breached its fiduciary duty by not seeking a declaration of the trust's termination date.

In response, the trustee moved in August 2007 to dismiss the counterclaim for failure to state a claim, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2006)). The trustee argued that there was no ambiguity under the terms of the will and interpretation 1 was the only reasonable reading of the termination provision. In accordance with interpretation 1, the trust would terminate 21 years after the last to die of the three measuring lives who were still living: Elizabeth Sperry Rodman, William Casterline and Burnham Casterline, who were the descendants of Hartley Harper's sister-in-law.

In their September 2007 answer, the income beneficiaries–who are the descendants of niece Alice and nephew Frederick–asserted the affirmative defenses of *laches*, waiver and estoppel, and asked the trial court to dismiss the remainder beneficiaries' counterclaim.

In January 2008, the trial court denied the trustee's motion to dismiss the counterclaim. The trial court ruled that section 2-615 of the Code was not the appropriate vehicle to decide the merits of the remainder beneficiaries' request for declaratory judgment.

In March 2008, the trustee and the remainder beneficiaries filed cross-motions for summary judgment, pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2006)),

concerning the termination date of the trust and the counterclaim alleging the trustee breached its fiduciary duty to the remainder beneficiaries. Whereas the trustee urged the trial court to adopt interpretation 1, the remainder beneficiaries urged the trial court to adopt interpretation 4, which terminates the trust as of 1992. The income beneficiaries joined the trustee's motion for summary judgment.

In May 2008, the trial court denied both the trustee's motion for summary judgment as to interpretation 1 and the remainder beneficiaries' motion for summary judgment as to interpretation 4. The trial court, however, deemed the remainder beneficiaries to have asserted a claim in their motion for summary judgment as to interpretation 3, issued a briefing schedule, and set a hearing date. The trial court reserved ruling on the parties' cross-motions for summary judgment concerning the breach of fiduciary duty counterclaim.

The remainder beneficiaries filed their brief in support of summary judgment based on interpretation 3. In response, the trustee, joined by the income beneficiaries, renewed its motion for summary judgment based on interpretation 1.

In July 2008, the trial court granted summary judgment in favor of the remainder beneficiaries as to interpretation 3, which directs the trust to terminate in January 2013, *i.e.*, 21 years after niece Alice's death. The trial court stated that it must presume Hartley Harper did not intend to violate the rule against perpetuities; however, the provision in subparagraph (4) directing the trust to pay income to all the descendants of his niece and nephew could, as written, continue indefinitely. Consequently, the savings clause in subparagraph (5) was triggered. The trial court ruled that the savings clause must be construed in context with the problematic phrase

in subparagraph (4), which unambiguously expressed Hartley Harper's intent that the descendants of his niece and nephew should receive income for as long as possible before the remainder beneficiaries would inherit the balance of the trust. The trial court concluded that it was logical, therefore, to construe the will to limit the measuring lives in the savings clause to the niece and nephew, who were alive but did not have any children yet when Hartley Harper died in 1932.

Furthermore, the trial court found no breach of fiduciary duty by the trustee. Therefore, the trial court granted the trustee's cross-motion for summary judgment concerning the remainder beneficiaries' breach of fiduciary duty counterclaim. The trial court stated that this was "a final and appealable order pursuant to Illinois Supreme Court Rule 304(a)." See 210 Ill. 2d R. 304(a).

The income beneficiaries filed a motion to reconsider the termination date or clarify the July 2008 order, which the trial court denied in August 2008. In September 2008, the income beneficiaries appealed the trial court's July and August 2008 orders concerning the trust's termination date. The remainder beneficiaries filed a notice of cross-appeal and filed with this court a motion to dismiss the income beneficiaries' appeal, arguing inadequate Rule 304(a) language. The trustee also appealed the trial court's July and August 2008 orders.

In October 2008, this court granted the remainder beneficiaries' motion to dismiss the income beneficiaries' appeal.

In November 2008, the remainder beneficiaries filed a motion to dismiss the trustee's appeal, citing inadequate Rule 304(a) language. This court denied that motion in December 2008.

Meanwhile, in November 2008, upon the petition of the trustee and income beneficiaries, the trial court made a written finding pursuant to Rule 304(a) that there was no just reason to delay enforcement or appeal of the July 2008 order. The income beneficiaries and trustee filed additional timely notices of appeal, and the remainder beneficiary timely filed a cross-appeal. This court consolidated the cases.

## II. ANALYSIS

We review *de novo* a trial court's decision granting summary judgment. Hartford Fire Insurance Co. v. Everest Indemnity Insurance Co., 369 Ill. App. 3d 757, 761 (2006). Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). Where, as here, the parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law. Steadfast Insurance Co. v. Caremark Rx, Inc., 359 Ill. App. 3d 749, 755 (2005).

### A. Jurisdiction

The remainder beneficiaries contend the only issue that is properly before us is whether the trial court properly determined in its July 2008 order that the trust should terminate in January 2013 in accordance with interpretation 3. According to the remainder beneficiaries, this court does not have authority to review the denial of the trustee and income beneficiaries' motion for summary judgment, which urged the trial court to adopt interpretation 1. The remainder

beneficiaries argue that this court lacks jurisdiction "to entertain" the trustee and income beneficiaries' arguments concerning interpretation 1 because the trial court's Rule 304(a) finding did not refer to or encompass interpretation 1. The remainder beneficiaries also argue that the denial of a motion for summary judgment is not reviewable on appeal. We disagree.

"An order denying a motion for summary judgment is ordinarily not a final order and is therefore not appealable." Illinois State Chamber of Commerce v. Filan, 216 Ill. 2d 653, 677 (2005). An exception to this rule exists, however, "where parties have filed opposing motions for summary judgment and the circuit court has granted one and denied the other." Filan, 216 Ill. 2d at 677. That is the case here. The parties filed cross-motions for summary judgment addressing the same issues: the proper termination date of the trust and the breach of fiduciary duty counterclaim. The trustee and income beneficiaries urged the trial court to adopt interpretation 1 concerning the trust termination date, and the remainder beneficiaries initially urged the trial court to adopt interpretation 4. The trial court rejected both those interpretations and set oral argument concerning interpretation 3. The remainder beneficiaries then adopted interpretation 3, and the trustee and income beneficiaries renewed their cross-motion for summary judgment based on interpretation 1. The trial court entered a final and appealable order on that issue, and that judgment is now properly before this court for *de novo* review.

In determining whether the trial court's declaration as to the trust termination date was correct, we are not limited to considering only the argument that prevailed in the trial court. The material facts in this case are not in dispute. Accordingly, we make an independent analysis of the will and may consider the competing arguments that were advanced below. Raasch v. Meier,

11

Nos. 1-08-2647, 1-08-3281 & 1-08-3282 (cons.)

171 Ill. App. 3d 226, 229-30 (1988); see also Corral v. Mervis Industries, Inc., 217 Ill. 2d 144, 152 (2005) ("the trial court's ultimate legal determination is subject to *de novo* plenary review").

### B. Trust Termination Date

The trustee and income beneficiaries ask this court to reverse the trial court's decision to adopt interpretation 3 and direct the trial court to enter judgment in their favor by adopting interpretation 1. The trustee and income beneficiaries assert that interpretation 1 tracks the words Hartley Harper wrote and reads subparagraphs (4) and (5) together to provide a clear, coordinated plan for the termination of the trust that complies with the rule against perpetuities. They argue that the trial court improperly added the term *income* to subparagraph (5) even though the trial court found no ambiguity in the will. Specifically, the trustee and income beneficiaries contend the trial court erred when it interpreted the subparagraph (5) provision requiring termination of the trust 21 years after the death "of all the beneficiaries herein named or described who are living at the date of [Hartley Harper's] death" to be limited only to named or described *income* beneficiaries, thus changing the trust's termination date from 21 years after the deaths of the three still-living beneficiaries and measuring lives to 2013, which is 21 years after niece Alice's death.

In support of their position, the remainder beneficiaries contend the trial court properly determined that the trust terminated in 2013, in accordance with interpretation 3. According to the remainder beneficiaries, the trial court correctly interpreted subparagraph (5) by looking to the first sentence of subparagraph (4) to define the beneficiaries and, thus, limit the measuring

12

Nos. 1-08-2647, 1-08-3281 & 1-08-3282 (cons.)

lives referenced in subparagraph (5). The remainder beneficiaries argue that relying on the individuals identified in subparagraph (4) to be the measuring lives under subparagraph (5) is consistent with Hartley Harper's intent not to commit a perpetuities violation or render the termination provision in subparagraph (4) meaningless. The remainder beneficiaries also argue that subparagraphs (4) and (5) were "not thoughtfully drafted," so the trial court properly corrected those problematic provisions by adding the missing language to correct inadvertent scrivener's errors.

Illinois law presumes that the creator of a will or trust had knowledge of the law governing the instrument at the time it was executed and that he created the instrument in conformity with the law. Chicago Title & Trust Co. v. Vance, 175 Ill. App. 3d 600, 604 (1988). When a court construes either a trust or a will, the challenge is to ascertain the settlor's or testator's intent and, provided that the intention is not against public policy, to give it effect. Harris Trust & Savings Bank v. Beach, 118 Ill. 2d 1, 4 (1987). In searching for the testator's intent, courts analyze "both the words used in the instrument and the circumstances under which they were drafted, including: 'the state of the testator's property, his family, and the like.' " Harris Trust & Savings Bank, 118 Ill. 2d at 3-4, quoting Armstrong v. Barber, 239 Ill. 389, 404 (1909). Furthermore, when the court examines the language used in the instrument, it must be considered as a whole, and the provisions of a will or trust should not be read in isolation. Raasch, 171 Ill. App. 3d at 230. "If the instrument's language clearly indicates the testator's intent, the court should not resort to rules of construction." Raasch, 171 Ill. App. 3d at 230.

Our review of Hartley Harper's will and trust reveals that when it is read in its entirety,

13

the intent of Hartley Harper is clear and unambiguous. Subparagraph (4) cannot be read properly in isolation, and savings provisions like subparagraph (5) are a standard practice among estate planners and a common and effective way to avoid perpetuities problems. A savings clause operates to save a trust in the event that any of the prior termination provisions of a will or trust run afoul of the perpetuities rule. See Hampson, 88 Ill. App. 3d at 1063; In re Estate of Reeve, 393 Ill. 272 (1946). Hartley Harper's use of the savings clause clearly indicates that he intended to measure the maximum duration of the trust in the event that it might violate the rule against perpetuities. When subparagraphs (4) and (5) are read together, any perpetuities problem is cured by requiring the termination of the trust at the earlier of either (1) the death of all the descendants of Hartley Harper's nephew Fred and niece Alice, or (2) 21 years after the death of the last of the beneficiaries who were named or described in the entire will and were living at the time of Hartley Harper's death, *i.e.*, his sister-in-law Flora's three descendants: Elizabeth Sperry Rodman, William Casterline, and Burnham Casterline.

When the will was written, niece Alice and nephew Fred did not have descendants, but Hartley Harper clearly intended to benefit any possible descendants they might have. However, because that line of descendants as designated in subparagraph (4) could continue indefinitely, Hartley Harper provided an alternate termination date, or savings clause, in subparagraph (5) to ensure that the trust complied with the rule against perpetuities. See Restatement (Second) of Property: Donative Transfers §1.3, Comment a (1983) (explaining that the danger of a rule against perpetuities violation may be removed by a savings clause, which provides that any nonvested interest that has not vested within 21 years after the death of certain identified

measuring lives shall terminate and other identified beneficiaries shall take the property). Read together, subparagraphs (4) and (5) comprise a termination plan for the trust that fully complies with the rule against perpetuities.

In subparagraph (5), Hartley Harper used the phrase "all the beneficiaries" to identify the measuring lives that would trigger the perpetuities period. According to the plain and ordinary meaning of the words in his will, he did not limit the measuring lives to only income beneficiaries. Furthermore, Hartley Harper identified a reasonable number of readily ascertainable beneficiaries to serve as measuring lives: "all the beneficiaries herein named or described who are living at the date of my death." The phrase "all the beneficiaries" in subparagraph (5) refers to Hartley Harper's wife; brother Fred; niece Alice, nephew Fred and their descendants; sisters Leonora and Rosilda; and stepdaughter Mary, stepgrandson Henry, sister-in-law Flora and their descendants.

The remainder beneficiaries complain, however, that it is nonsensical for the people Hartley Harper wanted to benefit upon the trust's termination to be used as measuring lives. This argument, however, fails to take into account that the overriding concern of Hartley Harper was to provide for the income beneficiaries as long as possible. The Illinois statute concerning perpetuities is designed to prevent testamentary trusts from being declared void for failure to comply with the rule against perpetuities. It contains a savings provision very similar to Hartley Harper's subparagraph (5), using as measuring lives "all the beneficiaries of the instrument who were living at the date when the period of the rule against perpetuities commenced to run." 765

15

ILCS 305/5(a) (West 2008). People whose lives are used to measure the perpetuities period need not be specifically named in the will and need not even have any interest in the trust estate. Chicago Title & Trust Co. v. Shellaberger, 399 Ill. 320, 333 (1948). All that is required is that measuring lives must be alive at the time of a testator's death, must be identifiable, and must not be so numerous or of such a description that it would be impossible or exceedingly difficult to identify them and to learn when the last member of the group had died. H. Shapo, G. Bogert, & G. Bogert, Trusts & Trustees §213, at 181 (3d ed. 2007).

Hartley Harper wanted his niece and nephew and their descendants to receive income from the trust for as long as possible but, at the same time, he did not want the trust to violate the rule against perpetuities. To protect against the possibility that his niece and nephew would have descendants who were not lives-in-being during Hartley Harper's lifetime, he included the savings clause of subparagraph (5) to ensure that his trust would terminate within the time frame permitted by law. Although subparagraph (4) when viewed in isolation violates the rule against perpetuities, the addition of the savings clause in subparagraph (5) constitutes a valid scheme whereby the trust does not violate the rule against perpetuities.

We find no support for the remainder beneficiaries' claim that Hartley Harper actually intended something different from what his will plainly provided. We reject the claim that the omission of the term *income* in subparagraph (5) to limit the measuring lives was a scrivener's error. See Great American Federal Savings & Loan Ass'n v. Grivas, 137 Ill. App. 3d 267, 274-75 (1985) (affirming trial court's refusal to reform the contract where the party seeking reformation failed to prove by clear and convincing evidence that the provision in question had

16

been included mistakenly). The remainder beneficiaries' position is inconsistent with what the will actually states. Hartley Harper nowhere indicated an intention to use only income beneficiaries as measuring lives. Adding the term *income* to subparagraph (5) adversely affects Hartley Harper's testamentary scheme because he wanted assets to go to his own family line for as long as possible, rather than to ensure for a quicker inheritance by his sister-in-law's family line.

Furthermore, there is no basis for the remainder beneficiaries' claim that Hartley Harper specifically intended the three named remainder beneficiaries (Mary Foster, Henry Foster and Flora Casterline) to benefit from the trust. Rather, he intended those remainder beneficiaries to inherit under certain circumstances, depending on how long the trust lasted. Hartley Harper provided for an orderly distribution of his estate: first to his wife, brother and sisters, and then to his niece and nephew and their descendants. Only then would the three named remainder beneficiaries receive anything and only if they were still alive. Otherwise, the remainder of the estate would pass to their descendants. Eventually, however, Hartley Harper's niece and nephew did have children and grandchildren, and Hartley Harper provided for this contingency by giving those descendants income and then identifying remainder beneficiaries and their descendants to take the remainder interest should the trust last a long time. Yet, Hartley Harper was mindful of potential perpetuities problems, so he provided for an ultimate trust termination date in subparagraph (5) of his will.

The remainder beneficiaries cite several cases to support the proposition that a court may "strike, insert or transpose words to determine and effectuate the intention of a testator." In re

17

Nos. 1-08-2647, 1-08-3281 & 1-08-3282 (cons.)

Estate of MacLeish v. MacLeish, 35 Ill. App. 3d 835, 839 (1976) (the court construed a minor ambiguity caused by a typographical error in order to give effect to the settlor's clear intent). See also Ranger v. Ranger, 379 Ill. App. 3d 752, 754-55 (2008) (two different provisions in a trust instrument conflicted with each other and could not both be enforced, so the court looked for the settlor's intent from the document as a whole); Chicago Title & Trust Co. v. Schwartz, 120 Ill. App. 3d 324, 328 (1983) (where two paragraphs of a will created an ambiguity when read together, the court added the phrase "if there be no issue" to one paragraph to reconcile it with the other and thereby effectuated the testator's intent for her grandchildren to receive an interest following the death of their parent); Hampson, 88 Ill. App. 3d at 1062-63 (court permissibly struck a provision that violated the rule against perpetuities because it could be done without affecting the scheme of the settlor). The proposition cited by the remainder beneficiaries, however, is limited to situations where a court is construing an ambiguous or inconsistent instrument and trying to harmonize clauses while avoiding an unreasonable or absurd construction. MacLeish, 35 Ill. App. 3d at 839. Hartley Harper's will presents no such problems.

Finally, the remainder beneficiaries assert that provisions concerning Hartley Harper's two sisters suggest he intended for the trust to terminate at an earlier rather than a later date. Specifically, when the trust terminated, the trustee was instructed to distribute the assets but retain a sufficient amount of the principal to pay the annual annuities to the two sisters. According to the remainder beneficiaries, Hartley Harper's anticipation that the trust could have terminated before his sisters died confirms that he did not want the trust to run on for over 75

18

years. We do not agree with the inference drawn by the remainder beneficiaries. Rather, we find that Hartley Harper's will was expertly drafted to carry out his intent while addressing multiple potential contingencies.

We find that–despite the clear and unambiguous will and trust provisions–the trial court improperly reformed Hartley Harper's will when it adopted interpretation 3. Making changes to an unambiguous document is reformation, not interpretation, and there is no basis for reformation here. See Handelsman v. Handelsman, 366 Ill. App. 3d 1122, 1132 (2006) (reformation is the equivalent of allowing a stranger to make a will for the decedent); In re Estate of Phelan, 375 Ill. App. 3d 875, 882 (2007) (quoting Handelsman with approval). We remand this matter to the trial court with directions to enter summary judgment in favor of the trustee and income beneficiaries by adopting interpretation 1.

## C. Breach of Fiduciary Duty

The remainder beneficiaries argue the trial court erred in granting summary judgment in favor of the trustee and income beneficiaries as to the remainder beneficiaries' breach of fiduciary duty counterclaim. In their counterclaim, the remainder beneficiaries alleged that the trustee historically had interpreted the termination date at least three different ways but never sought a declaration from any court as to the proper termination date. The remainder beneficiaries also alleged they were damaged because the trust should have been terminated in 1992 and the principal distributed to them. They argue on appeal that the trustee's confusion concerning the termination date lasted up until 1994, and in the face of such confusion, the trustee had a duty to seek instructions from a court as to the proper termination date.

"[A] trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith." Fuller Family Holdings, LLC v. Northern Trust Co., 371 Ill. App. 3d 605, 615 (2007). "The intent of the settlor is the initial question to be addressed before determining the secondary issue of whether the trustees acted in good faith." Goddard v. Continental Illinois National Bank & Trust Co. of Chicago, 177 Ill. App. 3d 504, 509 (1988).

First, we disagree with the remainder beneficiaries' statement concerning the facts. Although they assert that the trustee was confused about the termination date as late as 1994, our review of the record establishes that in 1992 the trustee concluded that the trust terminated in accordance with interpretation 1 and communicated that conclusion to the remainder beneficiaries.

Furthermore, the provisions of Hartley Harper's trust are clear and unambiguous, so we see no reason why the trustee had any obligation to seek judicial construction of the meaning of those provisions. In addition, the remainder beneficiaries cannot establish damages, which are an essential element of a claim for breach of fiduciary duty. Chicago City Bank & Trust Co. v. Lesman, 186 Ill. App. 3d 697, 701 (1989) (to establish a breach of fiduciary duty, the plaintiff must show that damages were proximately caused by the defendant's breach). There are no damages here because the trust termination date occurs in the future, in accordance with interpretation 1. Therefore, we affirm the trial court's decision to enter summary judgment in favor of the trustee on the breach of fiduciary duty counterclaim.

### III. CONCLUSION

For the reasons stated above, we reverse the judgment of the trial court concerning the termination date of the trust and remand this matter to the trial court to enter summary judgment in favor of the trustee and income beneficiaries by adopting interpretation 1. We also affirm the judgment of the trial court granting summary judgment in favor of the trustee on the breach of fiduciary duty counterclaim.

Reversed in part and affirmed in part; cause remanded with directions.

GARCIA and PATTI, JJ., concur.

Nos. 1-08-2647, 1-08-3281 & 1-08-3282 (cons.)

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

BANK OF AMERICA, N.A., as Trustee Under the Will of Hartley Harper, Deceased,

Plaintiff-Appellant and Cross-Appellee,

v.

JOHN CARPENTER, *et al.*,

Defendants-Appellees and Cross-Appellants.

Nos. 1-08-2647, 1-08-3281 & 1-08-3282 cons.

Appellate Court of Illinois
First District, FIRST DIVISION

May 24, 2010

Justice Bertina E. Lampkin authored the opinion of the court:

Justice Garcia and Justice Patti concur.

Appeal from the Circuit Court of Cook County.
The Hon. William O. Maki, Judge Presiding.

**COUNSEL FOR APPELLANT and CROSS-APPELLEE**
Schiff Hardin LLP, Chicago, IL 60606
OF COUNSEL: Thomas W. Abendroth, David C. Blickenstaff
and Lisa M. Natter
*Attorneys for Bank of America, N.A., as Trustee*

Jenner & Block LLP, Chicago, IL 60611
OF COUNSEL: Richard P. Campbell, Barry Levenstam
and Irina Y. Dmitrieva
*Attorneys for Nancy Harper and Her Family*
and
McGuire Woods LLP
OF COUNSEL: Henry deVos Lawrie Jr., Marta A. Stein
and Carlin R. Metzger
*Attorneys for John Carpenter and His Family*

**COUNSEL FOR APPELLEES and CROSS-APPELLANTS**
Shefsky & Froelich Ltd., Chicago, IL 60601
OF COUNSEL: Lynn A. Ellenberger and David W. Nyberg

Nos. 1-08-2647, 1-08-3281 & 1-08-3282 (cons.)